In the Matter of the Application of SARAH M. KRAUS, Individually and as President of Social Investigator Eligibles Association and for the Members Thereof Similarly Situated, Appellants, for an Order of Mandamus against OLE SINGSTAD and Others, Constituting the Emergency Relief Bureau, and FRANK J. TAYLOR, Comptroller of the City of New York, Respondents.

JOHN J. BENNETT, JR., Attorney-General of the State of New York, Intervenor.

First Department, March 25, 1937.

*Albert de Roode*, for the appellants.

*Jeremiah M. Evarts* of counsel [*Robert H. Schaffer* and *Charles F. Murphy* with him on the brief; *Paul Windels, Corporation Counsel*], for the respondents.

*Henry Epstein, Solicitor-General*, of counsel [*John J. Bennett, Jr., Attorney-General*], for the Attorney-General of the State of New York, intervenor.

McAvoy, J.   The names of the petitioners appeared upon an eligible list for the position of social investigator promulgated December 8, 1932. This proceeding was brought January 30, 1936, to compel the emergency relief bureau of the city of New York to employ only persons selected pursuant to the Civil Service Law and Rules, to compel the emergency relief bureau to discontinue the employment of persons not so selected, to compel the comptroller of the city of New York to cease contributing to the salary or compensation of any of the persons now employed in the emergency relief bureau until the municipal or State Civil Service Commission shall certify that such persons are employed pursuant to Civil Service Rules and Law, and to compel the appointment of petitioners to investigative positions in the emergency relief bureau.

On March 31, 1936, an alternative order of mandamus was granted fixing the sole issue to be tried thereunder as that raised by the denial by the emergency relief bureau that competitive examination was practicable to fill the positions involved.

The return contained substantially the following defenses: *First*, that the Civil Service Laws are not applicable to the employees of the temporary emergency relief administration or to any other relief bureau, including the emergency relief bureau, established in a city public welfare district for the emergency period; *second*, that the provisions of chapter 798 of the Laws of 1931, and the amendments thereto, providing that the employees and the clerical and other assistants or volunteers of the temporary emergency relief administration or of emergency relief bureau, shall not be subject to the provisions of the Civil Service Law, are not contrary to the provisions of the Constitution of the State of New York; *third*, that the provisions of chapter 798 of the Laws of 1931, and the amendments thereto, providing that the employees, etc., of T. E. R. A. or of emergency relief bureau shall not be subject to the Civil Service Law, are not contrary to the provisions of the Constitution of the State of New York; *fourth*, that since there is no budget

provision for the employees of the emergency relief bureau, petitioners were not entitled to appointment from the list. (*Matter of Danker* v. *Dept. of Health*, 266 N. Y. 365.)

It is stipulated that approximately twenty-five per centum of the clerical administrative staff and forty per centum of the investigative force are not needy persons, and as to these persons the decision in *Matter of Social I. E. Assn.* v. *Taylor* (268 N. Y. 233) is not necessarily controlling.

May 25, 1936, objection to the return as insufficient in law was filed and motion made for the final peremptory order of mandamus. This motion came on June 17, 1936. June 19, 1936, the petition was amended to specify by name the individual members of the association, and to include specifically in the prayer for relief the appointment of such individual petitioners to the investigative positions filled by the emergency relief bureau without compliance with the Civil Service Law and Rules. The motion for final peremptory order was denied June 30, 1936.

The question to be determined here is whether employees such as investigators, bookkeepers, stenographers, clerks, telephone operators, typists, etc., who are not " on relief," engaged in administering the relief work in the emergency relief bureau of the city of New York are, in the language of the Constitution of the State, of New York (Art. 5, § 6) " in the civil service of the State, and of * . * * the civil divisions thereof, including cities and villages."

The Court of Appeals in both the *Danker* and the *Social I. E. Assn. Cases* (*supra*) specifically referred to the Emergency Relief Law as taking the people on work relief without the scope of the Civil Service Law. The intent of the Legislature must be construed as applying this exception to only people on work relief.

The positions of social investigators, clerks, telephone operators, stenographers and typists are all positions for which competitive examinations have for years been held, and proven eminently practicable.

The claim is asserted that section 19 of the Emergency Relief Law provides that these persons shall not be subject to the provisions of the Civil Service Law. The phraseology used in that section (as amd. by Laws of 1932, chap. 567, and Laws of 1933, chap. 9) reads: " No person employed pursuant to this act, during the emergency period, shall be subject to the provisions of the Civil Service Law."* This refers to " additional clerical and other assistants or volunteers," who are paid upon authorization by the central T. E. R. A. authority out of the " discretionary fund."

---

* Since amd. by Laws of 1936, chap. 822.— [REP.

This sentence refers only to the positions referred to in section 19. Section 19 does not cover the regular supervising force of the local emergency relief bureau.

In section 3 of the law which refers to the employees of the Central State Administrative Agency T. E. R. A. there is the sentence: " Employees and volunteers of the administration shall not be subject to the provisions of the Civil Service Law." This refers merely to the Central State Authority. It does not apply to the emergency relief bureau.

The emergency relief bureau is established under the provisions of section 12, paragraph 2, of the act, which provides for the establishment of an emergency relief bureau in cities as a consolidation of various relief agencies and the taking over of the former local relief bureaus provided for in section 7. It is provided that the powers and duties of these former local relief bureaus shall be vested in the new emergency relief bureaus upon such reorganization. Section 7 does not provide for these former local relief bureaus in cities any exemption of the employees of the local bureau from the application of the Civil Service Law. Section 7 provides that these local bureaus " may employ necessary clerks and assistants, whose compensation shall be fixed by the officer or governing Board by which such Bureau was created."

By section 7 the mayor " may establish " a local bureau.

Consequently, the emergency relief bureau, under section 12, succeeds to the powers and duties of this local bureau, and it is the power or duty of the local bureau to employ clerks and assistants whose compensation shall be fixed by the mayor. Therefore, the emergency relief bureau may employ clerks and assistants whose compensation shall be fixed by the mayor. Under such devolution of power there is no provision in sections 12 and 7 that the persons so appointed shall not be subject to the Civil Service Law.

The conclusion is inevitable that employees of the emergency relief bureau who are not on a status of " relief " are in the " civil service " within the contemplation of the constitutional provision (Art. 5, § 6).

The specific defenses raised in the return are invalid as matter of law and constitute no ground upon which the mandamus may be refused.

The order should be reversed, with twenty dollars costs and disbursements, and the motion for a final peremptory order of mandamus for the relief prayed for granted.

MARTIN, P. J., O'MALLEY and COHN, JJ., concur; DORE, J., dissents and votes for affirmance.

DORE, J. (dissenting). The petitioners appeal from an order of Special Term denying their motion to strike out the defenses contained in respondents' return to an alternative order of mandamus. The petition seeks a mandamus order (1) directing the emergency relief bureau of the city of New York to employ only persons selected pursuant to the Civil Service Law and Rules; (2) directing said bureau forthwith to discontinue the employment of persons not so selected; (3) directing the comptroller of the city to cease contributing to the salary of any of the persons now employed in the said bureau until the municipal or State Civil Service Commission shall certify that such persons are employed pursuant to the Civil Service Law and Rules; and (4) directing the appointment of the specific persons named in the amended petition to positions of investigation in the said bureau.

An alternative mandamus order was granted herein on March 31, 1936, for the purpose of determining the issue raised by the denial of the paragraphs of the petition relating to the practicability of a competitive examination. Respondents in their return set up the following four defenses:

1. That the Civil Service Law and Rules are not applicable to the employees of the emergency relief bureau, a temporary State emergency agent terminating June 30, 1937, and not a permanent division of the government performing the conventional and stable duties of government;

2. That because of the character of the work performed by the local emergency relief bureau the Legislature did not deem it practicable within the meaning of article 5, section 6, of the Constitution to hold civil service examinations for its employees, and chapter 798 of the Laws of 1931, as amended, expressly provided that such employees shall not be subject to the provisions of the Civil Service Law and such provision is not contrary to the Constitution;

3. That the provisions of chapter 798 of the Laws of 1931, as amended, enacted to deal with a grave emergency, are not contrary to the provisions of the Constitution; and

4. That the city's sole authority to appropriate for home and work relief is contained in chapter 798 of the Laws of 1931, under the provisions of which or under the Greater New York Charter there is no authority to create budget positions for E. R. B. employees and no budget positions for any such employee may be established; and accordingly under the ruling in *Matter of Danker* v. *Dept. of Health* (266 N. Y. 365) petitioners are not entitled to the relief prayed for.

By stipulation the parties have agreed that any final order shall not apply to E. R. B. employees who are on work relief or home relief or entitled by their necessitous condition to be placed in such status. It was also stipulated that approximately twenty-five per cent of the E. R. B. clerical administrative staff and forty per cent of the investigation force are not needy persons eligible or entitled to be recipients of work or home relief.

The stipulation thus limits the issue on this appeal to the following question: Are the E. R. B. employees in question who are not on relief subject to the provisions of the Civil Service Law?

The parties also stipulated that if those engaged in the work of investigation should be under civil service and in the competitive class thereof, the members of the petitioner, the Social Investigator Eligibles Assocation, should heretofore have been certified from the eligible list of social investigator and would have been appointed.

Respondents rely on the following sentence of section 19 of the Wicks Act (Laws of 1931, chap. 798, as amd. by Laws of 1932, chap. 567, and Laws of 1933, chap. 9): " No person employed pursuant to this act, during the emergency period, shall be subject to the provisions of the Civil Service Law." Respondents contend that section 19 is applicable and is a constitutional exercise of the reserve power of the State; and that even if it be held unconstitutional the members of the petitioner have no right to the relief sought as the T. E. R. A. is a State agency and the local emergency relief bureaus are subject to its supervision and control; that the positions are State and not city positions; that there is no municipal position nor any provision in the city budget for the employees of the E. R. B.; and that no authority exists under the charter or under the Wicks Act to create such positions.

Appellants contend that the employees of the E. R. B. who are not on relief are in the civil service within the contemplation of article 5, section 6, of the Constitution; that the Legislature is without power to provide that the employment of persons not on relief shall not be subject to the Civil Service Law; and that the positions in question are clearly of a character for which competitive examination is practicable.

The majority opinion holds in effect that the exception from the Civil Service Law mentioned in section 19 applies only to persons on work relief and has been so construed in *Matter of Danker* v. *Dept. of Health* (266 N. Y. 365) and *Matter of Social I. E. Assn.* v. *Taylor* (268 id. 233); that there is no provision in sections 12 and 7 of the act that the persons appointed in the local emergency relief bureaus shall not be subject to the Civil Service Law and that accordingly they are subject thereto; and that section 19

of the act (as amd. by Laws of 1932, chap. 567, and Laws of 1933, chap. 9) does not cover the regular supervisory force of the local emergency bureaus but only the additional clerical or other assistants paid out of the discretionary fund, and that accordingly it does not apply to the social investigators with whose status we are herein concerned.

I agree that the positions of investigator, clerk, telephone operator, stenographer and typist are of such nature that a competitive examination is eminently practicable; but differ with the conclusion reached by the court striking out the four defenses on the grounds stated.

Section 19 of the act (as amd. by Laws of 1932, chap. 567, and Laws of 1933, chap. 9) must cover the regular supervisory force of the local emergency relief bureaus. Since 1933 the local E. R. B. in question is the sole, exclusive consolidated agency responsible for the administration of home relief and work relief in the welfare district comprising the city of New York. It was created by section 12 of the Wicks Act (as amd. by Laws of 1933, chap. 259). Section 12 provides in effect that upon the written application of the mayor of a city the State administration may in its discretion and subject to its regulations " approve and authorize the consolidation of all relief activities " within the public welfare districts created by the act of 1931 into emergency relief bureaus whose personnel is in such case designated by the mayor; the said bureaus shall have " exclusive control of and be solely responsible for the administration in such public welfare district of home relief and/or work relief," and upon its appointment the prior local bureau terminates.

Section 19, as passed by chapter 798 of the Laws of 1931, provided as follows: " § 19. Employees of city and county commissioners. The administration may authorize city and county commissioners to employ such additional clerical and other assistants or volunteers, with qualifications satisfactory to the administration, who shall not be subject to the provisions of the Civil Service Law, as may be necessary for the administration of home relief in accordance with the rules of the administration and shall determine the number of such additional clerks and assistants and fix their salaries, which shall be paid from the money hereby appropriated." As amended by chapter 9 of the Laws of 1933 it reads as follows: " § 19. Salaries of local staffs. The administration may authorize city and county commissioners and emergency work bureaus to employ such additional clerical and other assistants or volunteers, with qualifications satisfactory to the administration, as may be necessary for the administration of home and/or work relief in

accordance with the rules of the administration and shall determine the number of such additional clerks and assistants and fix their salaries, such part, or all, of which salaries as the administration shall determine shall be paid from the money allocated to the discretionary fund. No person employed pursuant to this act, during the emergency period, shall be subject to the provisions of the Civil Service Law."

Clearly under section 12 when the E. R. B. took over all the powers of the former local relief bureaus it was the sole agency that could appoint investigators and there would be no investigators appointed and acting unless appointed by the E. R. B. Section 19, therefore, covers all clerical and other assistants of the city E. R. B.

No provision was necessary in sections 12 and 7 that the persons appointed shall not be subject to the Civil Service Law because the matter is expressly covered by section 19.

In *Matter of Danker* v. *Dept. of Health* (266 N. Y. 365) the Court of Appeals held that the board of estimate and apportionment could not abolish civil service positions so that other persons from the relief rolls might be hired to take their place and do the same work, and that such action was forbidden by section 16 of the Economy Act of 1934 (Laws of 1934, chap. 178). But the court also expressly held that the petitioner's reinstatement did not follow as the position had been abolished and there was no appropriation for the place or money to pay petitioner; and that the petitioner therein could not be reinstated without showing that the position existed and that there was an appropriation to cover such position.

In *Matter of Social I. E. Assn.* v. *Taylor* (268 N. Y. 233) it was held that article 5, section 6, of the Constitution is addressed only to the conventional and stable duties of the functionaries of civil government and does not cover persons selected for work relief because of their need for such relief to sustain life during the extraordinary emergency declared by the Legislature. But the court also expressly held that none of the work relief appointees received appointment to any office or employment in the civil service of the State: " The positions in which they are said to be employed never actually existed."

In *Matter of Ottinger* v. *Civil Service Comm.* (240 N. Y. 435) it was held that a statute which declared in advance that all positions, " deputies, officers and other persons," in the Attorney-General's bureau for the enforcement of the blue sky laws to be without the civil service and to be filled without any examination did not enforce the Constitution, article 5, section 9 [now section 6], to the limit of the practicable.

The *Ottinger* case related to the usual, ordinary stable functions of civil government. This case relates to the exceptional extraordinary and temporary emergency which the Legislature in good faith has declared continues to exist.

Applying the rule laid down in the *Danker* and *Social I. E. Assn.* cases these petitioners should not be granted a peremptory order of mandamus because no positions have been abolished in the civil service and filled by the E. R. B. workers, no such positions ever existed in such civil service, there is no appropriation to cover such positions, and the city under its charter is presently powerless to make such budgetary appropriations. (Greater N. Y. Charter, § 662.) The *Danker* case expressly held that the petitioner must prove, *first*, that the positions exist, and *second*, that there was an appropriation to cover them. There is no allegation, much less proof, of any such facts by these petitioners.

Applying the rule indicated in the *Social I. E. Assn. Case (supra)*, the E. R. B. employees are still mere temporary employees necessitated by the extraordinary emergency which the Legislature in good faith declares to continue; they are not employed in the conventional, usual and stable duties of the functionaries of the civil government, and do not fill any positions within such conventional and stable governmental departments. With regard to respondents' employees it may still be said, as was said in the *Social I. E. Assn.* case, " The positions in which they are said to be employed never actually existed," *i. e.*, within the civil service.

Moreover the employees in question have never been given any tenure of office; the agency of which they are part is a mere temporary interposition caused by widespread economic disaster and unemployment. There is no proof of any subterfuge to circumvent the Civil Service Law nor any claim of bad faith on the part of the Legislature in solemnly declaring that the emergency continues. Any such argument is met by the action of the Legislature in 1936 (Laws of 1936, chap. 873) providing that the functions of this temporary agency should completely cease and terminate on July 1, 1937; that the administration of relief should thereafter be placed upon a permanent basis; that when placed on such basis there should be an orderly governmental transfer without breaking down the organization of the emergency relief bureaus and without violence to either service or Civil Service Laws; and that consistent with the constitutional provision, competitive examinations should be had to determine the lists for positions in the service now being incorporated into State and municipal structure for the first time.

As Chief Judge CRANE said in *Chamberlin, Inc.*, v. *Andrews* (271 N. Y. 1 [April, 1936]):

" The courts can take judicial notice of the fact that unemployment for the last five or six years has been a very acute problem for State and Federal government.

" * * * The fact is that in the past few years enormous sums of State and Federal money have been spent to keep housed and alive the families of those out of work who could not get employment.

" * * * The Legislature seeks to meet the future now without waiting for the emergency to arise. Can it do so? Unless there is something radically wrong, striking at the very fundamentals of constitutional government, courts should not interfere with these attempts in the exercise of the reserve power of the State to meet dangers which threaten the entire common weal and affect every home."

Can it be said that there is something radically wrong striking at the very fundamentals of constitutional government to permit the Legislature in its reserve power to create a temporary emergency bureau and place it, during the period of the emergency, outside of the provisions of the Civil Service Law? It can hardly be said that a year is an unreasonable time within which to change a temporary bureau of such proportions as the emergency relief bureau into a permanent division of the government. It is to be noted that neither the State nor the municipal Civil Service Commission which should be vigilant to protect civil service status is urging petitioners' cause.

Finally as a practical matter the sole period now in issue is the temporary status from this date until July 1, 1937, that is, less than four months. There are no " positions " to be filled. There are no budgetary provisions to pay for such positions if they existed. Hence these petitioners cannot be appointed. The result, therefore, would merely mean the end of the present municipal machinery for administering local relief of which these employees are a necessary part, between now and July 1, 1937. Such a mandatory direction of the court that may throw the work of the emergency relief bureaus into great disorder and confusion during this short remaining emergency period should in my opinion not be made.

The defenses are sufficient. The order should be affirmed.

Order reversed, with twenty dollars costs and disbursements, and the motion for a final peremptory order of mandamus granted. Settle order on notice.