In the Matter of SARA G. KEARNS et al., Appellants, against BOARD OF EDUCATION OF THE CITY OF NEW YORK, Respondent.

Argued October 7, 1938; decided November 29, 1938.

*I. Maurice Wormser* and *Jules Jacobs* for appellants. Petitioners are entitled to designation as clerical assistants in continuation schools by virtue of their appointment to that position. (*Matter of Meagher*, 41 St. Dept. Rep. 542; *Matter of King*, 49 St. Dept. Rep. 388.) Petitioners are not guilty of laches. (*Neil* v. *Hodges*, 13 Fed. Supp. 916; *Callahan Estate* v. *I. R. T. Co.*, 90 Misc. Rep. 79; *Lonsdale* v. *Woonsocket*, 21 R. I. 498; *Matter of Lord*, 78 N. Y. 109; *Matter of Casey*, 195 Fed. Rep. 322; *Matter of Williams* v. *Pyrke*, 233 App. Div. 345.) Petitioners are entitled to the difference in salaries paid to them as teacher clerks and the sum they should have received as clerical assistants in continuation schools. (*Matter of Barmonde* v. *Kaplan*, 266 N. Y. 214; *Williams* v. *Pyrke*, 233 App. Div. 345.)

*William C. Chanler, Corporation Counsel* (*Arthur Bainbridge Hoff, Jr.*, and *Paxton Blair* of counsel), for respondent. Since the petitioners had never been appointed to the position of clerical assistant they had no right to the title and salary of that position. An employee has no right to be " designated " as the holder of a position to which he has no right to be appointed. (*Hurley* v. *Board of Education*, 270 N. Y. 275; *Ciaccia* v. *Board of Education*, 271 N. Y. 336; *Wood* v. *City of New York*,

274 N. Y. 155; *Matter of Becker* v. *Eisner*, 277 N. Y. 143; *Matter of Aronson* v. *Finegan*, 253 App. Div. 713; *People ex rel. Barry* v. *Keller*, 30 Misc. Rep. 52; *McCunney* v. *City of New York*, 40 App. Div. 482; *Stenson* v. *City of New York*, 40 Misc. Rep. 533; *Manning* v. *City of New York*, 150 Misc. Rep. 292; *Matter of Jaffe* v. *Board of Education*, 265 N. Y. 160; *Matter of Vandewoude*, 50 St. Dept. Rep. 199.) Because of their laches and because they are in the unclassified civil service the petitioners were rightly denied back salary. (*Matter of Phillips* v. *Kaplan*, 266 N. Y. 514; *Matter of Williams* v. *Pyrke*, 233 App. Div. 345; *People ex rel. Collins* v. *Ahearn*, 120 App. Div. 95; *People ex rel. City of Tonawanda* v. *Fitzhenry*, 170 App. Div. 227; *Matter of Pickett* v. *Board of Education*, 251 App. Div. 798; *Matter of Barmonde* v. *Kaplan*, 266 N. Y. 214.)

FINCH, J.   The petitioners were licensed for the position of " teacher clerk " in New York city elementary schools. In or about 1921 they were appointed as teacher clerks and assigned to continuation schools.   One of them, who was serving in the public schools, was transferred to a continuation school.   In 1927, the Commissioner of Education issued a ruling that continuation schools were to be deemed secondary schools and of the same grade as high schools.   Thereupon, a regular continuation school organization was set up by the Board of Education in its by-laws.   These by-laws specifically provided for the position of " clerical assistant " in continuation schools, but omitted the position of " teacher clerk." The petitioners were then informed that in order to qualify for the position of clerical assistant in continuation schools, they would have to comply with the requirements set up and take an examination.   By reason of their past service in the continuation schools, the written examination was waived as.to them, and they took an interview examination and a performance test.   They were informed that this would entitle them to have their names placed on

the eligible list with the names of those derived from the open competitive examination, but that it would not entitle them to an appointment as clerical assistant in any but a continuation school. " Therefore, persons entitled to exemption from the written examination for license as clerical assistant in continuation schools by virtue of continuation school service, should take the written examination if they desire to obtain a license as clerical assistant in day high schools, or in evening high, trade or industrial art schools, or if they believe that they can improve their prospective eligible list standing by taking the written examination."

After they had taken the interview examination and the performance test, the names of the petitioners were placed upon an eligible list for the position of clerical assistant along with the names of those who had taken the open competitive examination. Thereafter, the petitioners continued to perform the clerical work in the continuation schools where they had been prior to the examination. They were not, however, designated as clerical assistants on the payroll of the Board of Education, and did not receive the salary provided for clerical assistants.

The eligible list for clerical assistants upon which their names appeared expired on January 30, 1933, and the statute (L. 1933, ch. 146) purporting to revive this list was enacted in April, 1933. On April 5, 1935, the petitioners began a proceeding before the Commissioner of Education to require the Board of Education to make appointments from the eligible list of clerical assistants to the positions occupied by the petitioners. The Commissioner held that since continuation schools were to be considered as of high school grade, the positions should be filled by clerical assistants, and he directed that appointments be made from the eligible list. Shortly thereafter this Court held that the attempted revival of an expired eligible list was unconstitutional. (*Hurley* v. *Board of Education,* 270

N. Y. 275.) Because of this decision the Board of Education made no appointments from the expired eligible list upon which the petitioners' names appeared. The petitioners then amended their petition and substituted a prayer for an order commanding the Board of Education to designate them as clerical assistants in continuation schools as of September 9, 1929, with all the emoluments and benefits thereof. The Special Term, by its resettled order, directed the Board of Education to designate the petitioners on all licenses, records and payrolls of the Board as clerical assistants in continuation schools as of April 5, 1935, with all the emoluments and benefits thereof, and to pay each of them a sum equivalent to the difference between the salary each should have received for the period commencing April 5, 1935, based upon the appointment of each of them as clerical assistants in continuation schools as of April 5, 1935, and the salary received by each of them in such employment since April 5, 1935, with appropriate interest. The Appellate Division reversed, holding that the petitioners were never appointed to the position of clerical assistant, and that, in the absence of a valid appointment, they could not be designated as incumbents even though they performed the duties of the position.

There can be no doubt that the petitioners were never appointed formally or otherwise to the position of clerical assistant. Nor can it be said that this was a mere technical omission which can be overlooked. That there was no intention to appoint them as clerical assistants is shown by the fact that they were never paid the salary provided for that position, and there was no provision for them as clerical assistants on the payroll of the Board of Education. To hold, despite this, that they should be deemed to have been appointed since they continued in the position and did the clerical work in the continuation schools, would amount to an evasion of the civil service

laws. These statutes provided that appointments in the competitive class are to be made from among those graded highest in open competitive examinations, and that the appointment shall be from the first three persons on the appropriate eligible list. (Education Law, § 872 (5) [Cons. Laws, ch. 16]; see Civil Service Law, § 14 [Cons. Laws, ch. 7].) The petitioners' delay in acting has created this situation and there is no escape from the statutory requirements. The petitioners were not the only ones on the eligible list. Among the seventeen at the head of the list there were eight names besides those of the petitioners. One of the petitioners headed the list. But there are three other names before we come to the name of another petitioner.

The petitioners now ask the court to designate them *nunc pro tunc* to the title and salary to which they have never been appointed. Under these circumstances, to hold that the petitioners are deemed to have been appointed when they were in fact not so appointed, merely because they continued to do the work, would constitute a direct violation of the law.

The order appealed from should be affirmed, with costs.

CRANE, Ch. J. (dissenting). In 1921 the petitioners were teacher clerks in elementary schools, duly licensed and appointed. That year they were transferred to continuation schools. They had been serving in the public schools, and, upon the establishment of the continuation school, they were shifted. The continuation schools were not classified either as primary or secondary schools. The petitioners thus assigned and transferred as teacher clerks to the continuation schools, continued until the present day, doing the same work in the same occupation and in the same position, and when thereafter and in October 21, 1927, the Commissioner of Education issued a ruling to the effect that continuation schools were to be deemed secondary schools and as of the same

grade as high schools, there was no change whatever made in the work or the position of these petitioners.

The reality which faces us in this case is this fact — the petitioners have never ceased to do the same work as they did when they were transferred to continuation schools in 1921. Whatever change has come about has merely been on paper and in titles, and not in the positions or the nature of the work. With the change made in 1927, by classifying the continuation schools as secondary schools, a change was made in the name of the position held by these petitioners, and they were thereafter called " clerical assistant." Thereafter these petitioners were addressed as " clerical assistant." They made out their reports on blanks furnished by the Board of Education, naming them " clerical assistant," and from 1927 to the present day — eleven years — the Board of Education has kept them in their positions doing the same work, and paid them with public moneys.

It is now claimed in behalf of the Board of Education, if not by that body, that since 1927 there have been no " teacher clerks " in the continuation schools and that these petitioners have therefore been serving illegally. We cannot escape the conclusion that if " clerical assistants " only were provided for continuation schools, and their appointment could only be taken from civil service lists for " clerical assistant," then these petitioners have been illegally continued and illegally paid, all in violation of the Civil Service Law, for it is axiomatic that one cannot be employed in a position which must be filled from a civil service list; and a certification monthly to get the salary of the place is contrary to law if such person has not been taken from the list. We and the Board of Education cannot escape this situation.

The fact is, the Board did just what it should have done, in all fairness and justice. It re-graded the continuation schools, making them high schools, but it in no way changed the positions of these petitioners. Why

should the Board make any change? They were competent; they had been doing the work for over six years, and the Board continued them in the *same place*, doing the same work, and merely changed the name of the position from "teacher clerk" to "clerical assistant." In fact thereafter, as I have already stated, in all official reports, they were designated "clerical assistants." While the Board for the future appointments created a list by examinations for appointments thereafter to be made to clerical assistant positions, it did not require these petitioners to take any written examination for such a place, but held a qualifying examination, which has been recognized in the law both by us and by the Legislature as required in all fairness when changes have been made in the civil service alignments. This we said could be done regarding clerks in courts (*Matter of Sandford* v. *Finegan*, 276 N. Y. 70), also regarding the State troopers (*Matter of Andresen* v. *Rice*, 277 N. Y. 271). When we decided that the civil service applied to State troopers, we said regarding the old and tried employees: "This decision does not affect or disturb the officers in the positions they are now holding, as time must be given to the Superintendent to carry out the purposes of the Civil Service Law, as we have expressed it, without disrupting and disorganizing his staff. At such time and under such rules and regulations as he may adopt pursuant to this Executive Law, he can and will provide for examinations, giving due regard to experience and service in his ratings. (See *Matter of Kraus* v. *Singstad*, 275 N. Y. 302, 310.)" (p. 282.)

The Board of Education apparently complied with this law, giving to these petitioners a qualified examination and continuing them in their positions. We have recognized this as the only fair and reasonable thing to do and, to have turned these teacher clerks out and appointed others to do exactly the same work simply because the name of the position was changed, would not only have

shocked our sense of fair play but would be contrary to the very spirit and purpose of the Civil Service Law. Employees in the civil service of the State are to be protected by the Civil Service Law, and not trapped or tricked into removals through mere readjustment in names and grade. The record in this case shows that application has been made to the Commissioner of Education to declare these petitioners interlopers and to have them removed from the positions and work they are doing; in other words, to have it determined that for the past eleven years the Board of Education has proceeded illegally. Neither sense nor law leads to such a conclusion.

The application of these petitioners should be granted in so far as to require the Board of Education to designate them " clerical assistant," and to pay them accordingly from the date of this application. The back pay they are not entitled to, as they have waived their right to it.

LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and RIPPEY, JJ., concur with FINCH, J.; CRANE, Ch. J., dissents in opinion.

Order affirmed. (See 279 N. Y. 794.)