RAFAEL AVERSA, Plaintiff, *v.* JAMES E. FINEGAN, President, and Others, as Commissioners, Constituting the Municipal Civil Service Commission of the City of New York, and Others, Defendants.*

Supreme Court, Special Term, New York County, December 22, 1936.

* Affd., 250 App. Div. 752; 275 N. Y. 512.

Herman E. Cooper [*Osmond K. Fraenkel* and *Herman E. Cooper* of counsel], for the plaintiff.

Paul Windels, Corporation Counsel [*Jeremiah M. Evarts, Robert M. Schaffer* and *Charles F. Murphy* of counsel], for the defendants.

H. Eliot Kaplan, for the Civil Service Reform Association, *amicus curiæ*.

SHIENTAG, J.   This is an action brought to test the civil service status of social investigators employed by the emergency relief bureau.   The plaintiff is one of those investigators.   The action is brought against the members of the municipal civil service commission, the members of the board of the emergency relief bureau, and the commissioner of the department of public welfare. A declaratory judgment is sought defining the status of plaintiff and other investigators and their right to become part of the municipal civil service by taking a qualifying rather than a competitive examination.   It is also sought to enjoin the holding by the municipal civil service commission of a competitive examination for social investigator announced for December 30, 1936.

In 1931 the Legislature, by a statute known as the Wicks Act, created a State Temporary Emergency Relief Administration and local bureaus known as the home relief and work relief bureaus (Laws of 1931, chap. 798).   In 1933 the Wicks Act was amended so as to authorize the consolidation of local relief agencies (home relief and work relief bureaus) into an emergency relief bureau. Pursuant to the provisions of the amended statute, the mayor appointed an emergency relief bureau which since 1934 and up to the present time has been engaged in the administration of home and work relief in the city of New York.   Section 19 of the Wicks Act enacted that clerical and other assistants necessary for the administration of home relief should not be subject to the provisions of the Civil Service Law.   This provision has remained substantially the same to and ncluding the present date.

The emergency period fixed by the Legislature was extended by various statutes from time to time and now terminates on June 30, 1937 (Laws of 1936, chaps. 210, 873).   Upon the termination of the emergency period, the powers, functions and duties of the State Temporary Emergency Relief Administration (T. E. R. A.) are transferred to the State Department of Social Welfare. The functions of the local emergency relief bureaus are transferred to local boards of public welfare or to the city or county com-

missioners of public welfare. Specific provision was made in the statute dealing with the termination of the State Temporary Emergency Relief Administration for the manner in which existing employees were to be continued as part of the permanent organization. The Legislature there clearly declared its policy to be, that such employees were to be taken over on the basis of competitive civil service examinations. The municipal civil service commission for a long period has held open competitive examinations for the position of social investigator. When it became apparent that the emergency character of the administration of relief was about to end and such administration was to be transferred to departments performing permanent functions of government, the municipal civil service commission announced an open competitive examination for the position of social investigator, to be held on December 30, 1936.

The plaintiff and those investigators of the E. R. B. similarly situated complain that they should not be required to submit to an open competitive examination, that they are in effect now holding exempt positions under the civil service, and, therefore, by virtue of a rule of the municipal civil service commission they are entitled to be transferred to the permanent organization if they take what is known as a qualifying examination, an examination not competitive in character but held for the purpose of determining whether or not the applicant possesses the necessary qualifications to continue in the position he now holds.

The status of social investigators now in the employ of the E. R. B. depends upon a construction of the various statutes which have already been referred to briefly. The first question to determine is whether or not the Legislature had the power to declare, as it did in so many words, in the original Wicks Act and acts amendatory thereof, that persons rendering service for the E. R. B. and other temporary emergency relief agencies were not to be subject to the provisions of the Civil Service Law. If the Legislature had the power to do this, then clearly the plaintiff is not entitled to the relief that he seeks. He would not then have the status of an employee in the exempt class; he would be outside of the civil service entirely and would be obliged to submit to the open competitive examination which has been ordered.

The Court of Appeals, in the case of *Social Investigator Eligibles Assn.* v. *Taylor* (268 N. Y. 233), considered this question. There it was urged upon the court that these social investigators were in fact not civil employees but the recipients of emergency relief for which some incidental service was rendered. It was stressed that they were appointed not so much on the basis of qualifications

as on the basis of need, and that the entire emergency relief system would break down if the recipients of the State's bounty were to be subjected to the requirements and restrictions of the Civil Service laws. The Court of Appeals in its opinion in that case said: " These persons are among those selected by a unit of the Temporary Emergency Relief Administration for the bounty of work needed to sustain life. At the request of that body their services have been used in conformity with the statutory machinery devised for warfare with unemployment " (pp. 237, 238).

In the case before me it appears that the conditions of employment of these social investigators have been materially changed since 1934. Since that time they have been selected and are now appointed not on the basis of their needs, not as a matter of State bounty, but on the basis of their qualifications for the positions they hold. It appears also that social investigators originally named as recipients of work relief have been dismissed where their qualifications did not come up to standards fixed by the E. R. B. In other words, the emphasis is now upon the services they render as employees rather than upon the position that they formerly occupied as wards of the State receiving temporary emergency relief. It is now contended that such being the case, the action attempted to be taken by the Legislature in providing that these employees shall be entirely without the pale of the Civil Service laws of the State and municipality is invalid and in conflict with the provisions of article 5, section 6, of the State Constitution.

I am of the opinion that if the facts stipulated in this case had been presented to the Court of Appeals in the *Taylor* case that court would have reached a different conclusion. The entire trend of the opinion would seem so to indicate. As my learned colleague, Mr. Justice Callahan, recently held, " The positions involved herein are not filled by persons receiving ' work relief ' as were those involved in *Matter of Taylor* (268 N. Y. 223), but constitute the administration staff of the Emergency Relief Bureau." (*Kraus v. Singstad*, N. Y. L. J. Nov. 18, 1935, p. 1914.) I hold, therefore, in favor of the plaintiff's contention that the legislative attempt to take these positions entirely out of the civil service is invalid.

The next question to be considered is whether or not they have been placed in the exempt class of the civil service by the Legislature and if so whether the Legislature had the power to do this.

I find nothing in the statutes which specifically or by reasonable implication indicates a legislative intent to place these positions in the exempt class of the civil service. The Legislature made an effort to place these employees entirely outside the civil service. Having failed in this attempt, as the plaintiff himself urges, it cannot

be presumed that the Legislature intended to give the employees affected the benefits and privileges appertaining to a position in the exempt class of the civil service.

I go further and hold that the Legislature had no right by a blanket enactment, irrespective of the nature of the services rendered and irrespective of whether competitive examinations for those positions were practicable, to place all employees under the E. R. B. in the exempt class. (*Matter of Ottinger* v. *Civil Service Commission*, 240 N. Y. 435.) The Legislature and the Civil Service Commission have concurrent power to declare in appropriate cases that certain positions shall be classified as exempt. The basis for placing positions in the exempt class of the civil service is the practicability of competitive selection. Nothing has been shown to indicate that a competitive examination was impractical. In fact, competitive examinations for similar positions have been held for many years.

To permit the Legislature or a civil service commission to exempt positions by blanket enactment, irrespective of the practicability of competitive selection would be striking a vital blow at the entire merit system of the State and would tend to undermine the very foundations of the civil service so firmly imbedded in State policy as to be safeguarded by our fundamental law against invasion. The mere fact that an emergency agency has been set up does not in and of itself warrant the placing of all positions in that agency in the exempt class. The Civil Service Law is flexible enough to permit a widespread discretion in provisional appointments to enable the agency to function promptly and expeditiously until competitive examinations have been arranged. Moreover, the law transferring the functions of the temporary emergency bureaus to permanent governmental bodies specifically provides that due credit shall be given " for experience with the local emergency relief bureaus."

The court has no right to assume that the municipal civil service commission will act arbitrarily or unreasonably in this matter and in disregard of the rights of these investigators. On the contrary, the court has every right to assume that the municipal civil service commission will give full credit for the service rendered in the employ of the temporary relief agency and will co-operate with that agency so that by provisional appointments, if necessary, its work may be carried on without impairment of efficiency and without interruption.

To summarize, therefore, I hold that the Legislature attempted to place the positions in question entirely outside of the civil service; that this attempt was invalid; that the Legislature did not intend to place them in the exempt class, and that even if the Legislature had done so, its action would have been invalid. Not being in the

exempt class, the plaintiff and others similarly situated are not entitled as a matter of right to a qualifying examination, but must submit to an open competitive examination in connection with which they will receive, as the law provides, due credit for the service they rendered for the temporary agency. I hold further that the Legislature has indicated clearly its policy that when the functions of the temporary State and municipal administrations, dealing with unemployment relief, are transferred to permanent governmental bodies on July 1, 1937, the employees of those temporary organizations shall be required to submit to competitive civil service examinations before being transferred.

Judgment is accordingly directed in favor of the defendant municipal civil service commission, without costs. Exception to the other parties. Submit decision on notice on or before three P. M. on December 22, 1936.