In the Matter of the Application of VINCENT J. O'CALLAGHAN, Also Known as VINCENT J. CALLAGHAN, Petitioner, for Himself and on Behalf of All Others Similarly Situated with Respect to the Requirements Fixed for the Civil Service Examination to Be Conducted for the Position of Clerk, Grade 2, in the Department or Departments Assimilating the Functions of the Emergency Relief Bureau or Divisions Thereof, for a Mandamus Order, Peremptory or Alternative, against JAMES E. FINEGAN and Others, as Commissioners, and WILLIAM H. ALLEN, as Secretary of the Municipal Civil Service Commission of the City of New York, Defendants.

EUGENE JOHNSON, on Behalf of Himself and All Others Similarly Situated, Intervenor, Defendant.*

Supreme Court, Special Term, New York County, July 27, 1937.

* Affd., 276 N. Y. 587.

*David C. Broderick*, for the petitioner.

*Paul Windels, Corporation Counsel*, for the defendants.

*Herman E. Cooper*, for the intervenor.

VALENTE, J. In another proceeding (*Matter of Ryan* v. *Finegan*, 166 Misc. 548), decided only recently, I had occasion to grant the petitioner's application for an order of mandamus. There I held that the municipal civil service commission had acted unreasonably in fixing a maximum age limitation of twenty-five years for persons who wished to participate in the civil service examination for the position of clerk, grade 2.

The present proceeding relates to the same examination, but presents an additional question, namely, the constitutionality of the Livingston Act (Laws of 1937, chap. 358). The law, section 6, amended the Public Welfare Law by adding two sections, sections 3-j and 3-k. Section 3-k is as follows:

" For examinations held hereafter, and prior to July first, nineteen hundred thirty-eight, the following provisions shall be applicable: (1) The qualifications for the positions for which said examinations are to be held, shall be subject to the prior approval of the State Department of Social Welfare in consultation with the civil service commission.

" (2) Any person employed for a period of not less than three months between July first, nineteen hundred thirty-six and June thirtieth, nineteen hundred thirty-seven in an equivalent position in a public welfare department or an emergency relief bureau established under chapter seven hundred ninety-eight of the laws of nineteen hundred thirty-one, as amended, on whose salary State reimbursement is payable, shall be deemed eligible for admission to the examinations being held to establish lists from which the appointments are to be made to such public welfare department, or to such emergency relief bureau or the public welfare department or departments succeeding to its functions, and (3) in the grading of such examinations a higher rating shall be given for experience in administration of home relief gained as an employee in an equivalent position in a public welfare department or emergency relief bureau than for experience gained in any other department or agency, public or private."

While the provisions of the second clause are challenged in this proceeding, no adjudication can be regarded as complete unless it also embraced the third clause.

The commission has issued a call for an examination for the clerk's position, and in its announcement has specified an age range of eighteen to twenty-five years, and the educational requirements as graduation from a senior high school or the equivalent for applicants generally. As the statute indicates, persons employed in the emergency relief bureau shall be deemed eligible for admission to the examination without the necessity of meeting the age or educational prerequisites, except, however, that this type of candidate may be certified for appointment only in the emergency relief bureau or the public welfare department succeeding to its functions. Those who possess the age and educational requirements may receive appointments to vacancies occurring in any city department.

The history of the emergency relief bureau legislation has just been carefully and clearly reviewed by Chief Judge CRANE of the Court of Appeals in an exhaustive opinion in *Matter of Kraus* v. *Singstad* (275 N. Y. 302). Similarly in *Aversa* v. *Finegan* (164 Misc. 162), decided in December, 1936, Justice SHIENTAG had occasion to make a comprehensive study of related questions. It, therefore, would serve no useful purpose to indulge in the same exposition

again, and retrace the history of the various emergency relief laws, inasmuch as the opinions of Chief Judge CRANE and Justice SHIENTAG in the cases just mentioned did so completely. Suffice it to say that since 1931 various types of clerical help, telephone operators and investigators have been on the city and State payroll without any consideration being given to the Civil Service Law or the constitutional restriction. This system was inaugurated and continued under the plea of emergency which it is doubtful ever existed as to employees who actually needed no relief. Now after a lapse of over five years, the incumbents in the meantime having been employed in violation of civil service principles, it is proposed to restore the civil service rules and to conform to the dictates of the Constitution by holding an examination to fill positions in the clerical branch of the service. Whether the Legislature has overstepped the constitutional limitations in the enactment of the sections to which reference has just been made is the general query that is presented here.

The petitioner is forty years of age, lacks the educational requirements, and is not an employee of the emergency relief bureau. Concededly the circumstances are different from those presented in the *Ryan* case. That the commission under the Civil Service Law has power to make rules concerning civil service examinations cannot be disputed (*People ex rel. Moriarty* v. *Creelman*, 206 N. Y. 570), but, as has been pointed out, the commission may not promulgate clearly unreasonable regulations such as the imposition of a twenty-five-year age limitation for applicants who otherwise are qualified and possess the necessary educational requirements. (See *Matter of Ryan* v. *Finegan*, *supra*.) It hardly can be seriously contended that the commission acts arbitrarily when it sets an educational standard as graduation from a senior high school or its equivalent for general qualification in the city clerical service. The commission is not exceeding its powers as I view them when it demands high school graduation or the equivalent thereof from those who wish to enter the clerical service in any department. The first question that arises is, " Does the exemption conferred on emergency relief employees have the effect of voiding the statute? " The Constitution provides (Art. 5, § 6): " Appointments and promotions in the civil service of the State, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive; provided, however, any honorably discharged soldiers, sailors, marines or nurses of the army, navy or marine corps of the United States disabled in the actual performance of duty in any war, to an extent recognized by the United States Veterans' Bureau, who are citizens and residents of this State and were at the

time of their entrance into the military or naval service of the United States, and whose disability ex sts at the time of his or her application for such appointment or promotion, shall be entitled to preference in appointment and promotion, without regard to their standing on any list from which such appointment or promotion may be made. Laws shall be made to provide for the enforcement of this section."

The petitioner complains that the statute has in fact given a preference to emergency relief bureau employees in violation of the Constitution, and that, therefore, the act must fail.

It should be remembered that three months' employment in the emergency relief bureau does not qualify for admission to the examination for a clerical position in any department of the city service, but only in the relief bureau or the department succeeding to its functions. If this really created a preference condemned by the Constitution, I would have no hesitancy in saying so. May not the Legislature regard a particular kind of experience obtained in the specified branch of public service as the equivalent of a high school graduation for admission to a test for employment in the same field? I am inclined to the belief that this specific mandate of the Legislature does not constitute a preference of the kind prohibited by the Constitution. The Legislature may say that service or experience of a particular type qualifies one to participate in an examination and when that qualification does not destroy the results of the tests upon a competitive examination but is considered merely and only as a contributing factor. Admittedly, and as will be pointed out in a later part of this opinion, the case would be different if the Legislature by act advances emergency relief bureau employees from the bottom of the list to the top, granting them a higher rating, regardless of the results of the examination, or if no relationship existed between the duties rendered by emergency relief bureau employees and the duties of the position in the emergency relief bureau or public welfare department for which the examination at least in part has been called. In these events the creation of an illegal preference might be implied. This distinction is clearly pointed out in *Matter of Barthelmess* v. *Cukor* (231 N. Y. 435, 441). There Judge CARDOZO, in discussing a statute providing for a preference of persons in the military and naval service, said: " A different situation arises when service controls selection irrespective of qualifying value. It is the difference between an appraisal of merit, an estimate of fitness, and a preference or bonus. * * * This statute is not an estimate of capacity. It is the expression of a preference." Thus far all candidates enter the examination on an equal footing — no one has gained an advantage over the others.

That portion of the statute just referred to does not destroy the element of competition or render it ineffective, nor does it create a preference in the sense that emergency relief bureau employees are to be chosen before others. The mandate of the Constitution is that merit and fitness shall be ascertained " so far as practicable " by competitive examination. (*Barlow* v. *Berry*, 245 N. Y. 500; *Barthelmess* v. *Cukor, supra; Ottinger* v. *State Civil Service Commission*, 240 N. Y. 435.) The fact that emergency relief bureau employees are by act of the Legislature permitted to qualify for examination for positions in that bureau without being high school graduates does not in and of itself destroy the constitutional restriction, for the Legislature has discretionary power to substitute one form of ability, education or experience for another, so long as there is no unnatural classification and all classes of competitors start from scratch and are not favored on their way to the goal. Up to this junction the statute does not seem to violate the spirit of the constitutional limitation.

We now come to the remaining question. It should be recalled that the statute provides that " in the grading of such examinations a higher rating shall be given for experience in administration of home relief gained as an employee in an equivalent position in a public welfare department or emergency relief bureau than for experience gained in any other department or agency, public or private." Assuredly grades of eligibility should not be established without restriction, otherwise an " eligible list in truth consists of two lists, * * * one general and the other special." (*Barthelmess* v. *Cukor*, 231 N. Y. 435, 444, 445.)

I believe that the Legislature has overstepped the constitutional limitations when it declared that experience in the emergency relief bureau must be regarded as having a greater weight than experience obtained in any other department or agency. There is no reasonable or logical basis for such a direction. Here then we have an unmistakable sign that a particular group is to be granted an arbitrary preference. This should not be countenanced while we subscribe to a civil service policy which rests on the principle of competitive examination. Competitive examination loses all its significance when a favored group can enroll for a test, secure in advance by legislative fiat that they are already at least one step ahead of the rest of the field. The fact that a group is so favored rather than a single individual does not save the situation or restore the equilibrium. There is no good reason for holding that a mandatory preference of this character obtains greater sanctity in the eyes of the law because scores of persons will be the recipients of the favor rather than one. The experience acquired by emergency relief

bureau employees outside of the realm of civil service, and while on so-called " emergency service " or on " provisional appointment," should not receive a higher evaluation than experience possessed by other candidates in like fields similarly outside of the civil service. ( *Koso* v. *Greene,* 260 N. Y. 491.) To conclude otherwise would be acquiescing in the use of a device or circumvention which might soon know no bounds and ultimately reduce competitive civil service to a status unworthy of the name.

The fact that the qualifications for the position under the terms of the act shall be subject to the prior approval of the State Department of Social Welfare in conjunction with the civil service commission does not chasten the statute, for it is violative of the fundamental law. That is elementary.

In this connection it is necessary to observe that in the proposed examination experience is to be rated rather highly, or on the basis of thirty per cent. The written examination will count for seventy per cent. It cannot be denied that experience will weigh rather heavily in the balance and that employees of the emergency relief bureau will become the beneficiaries of a higher rating as the result of this legislative enactment. This evil cannot be underestimated, for it is only too well known that as little a fraction as of a single percentage point frequently is determinative of standing upon a list and often spells the difference between success and failure. It is one thing to admit emergency relief bureau employees to a competitive examination on the basis of experience acquired while in that service. It is quite another to admit them and immediately bestow a preferential standing based on the acquisition of that experience.

It may well be that, if the Legislature had declared that due regard should be given in the rating of candidates for experience gained in the emergency relief bureau or other public or private agency, a different situation would be presented, for there the element of favoritism would be eliminated.

For the reasons assigned I am of the opinion that the act in the respects indicated constitutes an infringement upon the competitive principle established by the Constitution and that the act confers an arbitrary favor on a special class, and must be declared unconstitutional. It is not to be inferred, however, that the petitioner is qualified to participate in any proposed examination for clerk, grade 2, for he lacks the educational requirement of a high school education, and this the commission may fix as a prerequisite for entrance to an examination.

Motion granted to the extent of restraining the civil service commission from granting the proposed preference in giving higher rating to emergency relief bureau or public welfare department employees under the statute here reviewed. Settle order on notice.