In the Matter of SARAH M. KRAUS, Individually and as President of Social Investigator Eligibles Association et al., Respondents, against OLE SINGSTAD et al., Constituting the Emergency Relief Bureau for the City of New York et al., Appellants.

JOHN J. BENNETT, JR., as Attorney-General of the State of New York, Intervener, Appellant.

Argued June 8, 1937; decided July 13, 1937.

*Paul Windels,* *Corporation* *Counsel* (*Jeremiah* *M.* *Evarts,* *Paxton Blair* and *Robert H.* *Schaffer* of counsel), for defendants, appellants. Section 19 of chapter 798 of the Laws of 1931, as amended, is constitutional. (*Matter of Social Investigator Eligibles Assn.* v. *Taylor,* 268 N. Y. 236; *Chamberlin, Inc.,* v. *Andrews,* 271 N. Y. 1; 299 U. S. 515; *Matter of People* [*Tit. & Mtge. Guar. Co.*], 264 N. Y.

69; *Home Bldg. & L. Assn.* v. *Blaisdell,* 290 U. S. 398; *Block* v. *Hirsh,* 256 U. S. 135; *Chastleton Corp.* v. *Sinclair,* 264 U. S. 543.)

*John J. Bennett, Jr., Attorney-General (Henry Epstein* of counsel), intervener, appellant. The absence of budget appropriations and the absence of provision for permanent positions in the city service prior to July 1, 1937, are fatal to petitioner's cause. (*Matter of Social I. E. Assn.* v. *Taylor,* 268 N. Y. 233; *Matter of Danker* v. *Dept. of Health,* 266 N. Y. 365.) Petitioners have no legal right to the remedy sought, nor a proper standing to attack the statute. (Civil Service Law [Cons. Laws, ch. 7], § 14; *Hurley* v. *Bd. of Education,* 270 N. Y. 275; *Ciaccia* v. *Bd. of Education,* 271 N. Y. 336.)

*H. Eliot Kaplan* and *Albert De Roode* for respondents. The phrase " shall not be subject to the provisions of the Civil Service Law," contained in section 19 of the relief act, is inapplicable to employees not "on relief." (*Matter of Social I. E. Assn.* v. *Taylor,* 268 N. Y. 233; *Matter of Danker* v. *Department of Health,* 266 N. Y. 365; *People* v. *Crane,* 214 N. Y. 154.) If the provision in section 19 of the relief act be construed to withdraw from competition the employment of persons not on relief, it is unconstitutional. (*People ex rel. McClelland* v. *Roberts,* 148 N. Y. 360; *Ottinger* v. *Civil Service Comm.,* 240 N. Y. 435; *Home Bldg. & L. Assn.* v. *Blaisdell,* 290 U. S. 398; *United States* v. *Schecter Poultry Corp.,* 295 U. S. 495.) Chapter 358 of the Laws of 1937 does not affect the rights of the petitioners as of May 29, 1936. (*Matter of Mullane* v. *McKenzie,* 269 N. Y. 369; *Hurley* v. *Bd. of Ed.,* 270 N. Y. 275.)

CRANE, Ch. J. In 1931 the Legislature of this State undertook to provide a means of support for the unemployed and those in want. It passed an act, chapter 798 of the Laws of 1931, entitled, " An act to relieve the people of the state from the hardships and suffering

caused by unemployment, \* \* \* " creating a temporary emergency relief administration. It was passed solely for an emergency in unemployment which was defined as the period between the 1st day of November, 1931, and the 1st day of June, 1932. Section 28 of the act read: " The administration shall be dissolved and cease to function at the time fixed by this act. \* \* \*." The fact is it did not cease and is still continuing to function, with thousands of employees who have never taken any civil service examination.

This administration has been popularized, as is the modern fashion, by the name " TERA." Local bureaus were defined as temporary emergency work relief bureaus created in cities and counties. The administration agency consisted of three persons appointed by the Governor to serve during his pleasure. Each city of the State was constituted a separate public welfare district. The Mayor of the city was to establish the public welfare district in the city. These local bureaus are to be responsible for the administration of work relief, and may employ necessary clerks and assistants whose compensation shall be fixed by the officer or governing board by which such bureau is created. All these local bureaus are subject to the supervision and direction of the State administration. The legislative body of the municipal corporations shall raise the money for the work of relief and for the expenses. The act also provides for the investigation of home relief. " In a city public welfare district the city commissioner shall investigate all cases of home relief " (§ 13).

Special attention must be given to section 19 of the act which is brought into prominence here by reason of the civil service question involved:

" § 19. Employees of city and county commissioners. The administration may authorize city and county commissioners to employ such additional clerical and other assistants or volunteers, with qualifications satisfactory

to the administration, *who shall not be subject to the provisions of the civil service law,* as may be necessary for the administration of home relief in accordance with the rules of the administration and shall determine the number of such additional clerks and assistants and fix their salaries, which shall be paid from the money hereby appropriated. There shall be paid also from the moneys hereby appropriated fifty per centum of the salary of persons in the employment of the emergency work bureau in the administration of work relief approved by the administration whose work is concerned with the registration or investigation of applications for work or the clerical work of the bureau when such salaries have been approved and such work authorized by the administration."

In 1933 the Legislature passed an amendatory act known as chapter 259 of the Laws of 1933, which created the emergency relief bureau of from three to five persons appointed by the Mayor in place of the local bureaus. Otherwise the law of 1931 continued substantially the same.

Under this authority for appointing all clerks and assistants and administrative workers without any regard to the Civil Service Law (Cons. Laws, ch. 7), upwards of one thousand persons were employed in the position of investigators or social investigators, positions which could easily have been filled by competent civil service examinations, as is conceded. It is stipulated between counsel that forty per cent of this force were not needy persons eligible and entitled to be on the status of recipients of work for home relief. In *Matter of Social Investigator Eligibles Assn.* v. *Taylor* (268 N. Y. 233) this court held that those who are given employment in these local bureaus as a bounty needed to sustain life, that is, those who are given work and wages as emergency relief, come within the direct purposes and object of the law, and were not subject to civil service rules and regulations. These relief laws were not passed for the purpose of

giving work to those, such as investigators, clerks and stenographers and the like, who were not in need of relief. We have therefore, the concession, or the fact, that at least four hundred social investigators were employed by the Emergency Relief Bureau without having been taken from any civil service list or having passed any civil service examination, although there was such a list in existence in 1932.

It is also stated, beyond contradiction, that there are clerks, stenographers, typists, telephone operators who have been employed through all these years without any civil service examination and who are still in the employ of these emergency bureaus. No emergency existed regarding these employees nor the social investigators, and it is now conceded, as it must be, that it is practicable and always has been, to have and conduct competitive examinations for such places. Nowhere is it claimed that there have not been plenty of applicants willing to take and pass such examinations.

Since 1931, or for a period of five years or more, these clerks, typewriters, telephone operators, social investigators have been employed at city and State expense, without any consideration being given whatever to the Civil Service Law or the demands of the State Constitution — and all this done under the plea of emergency which never existed regarding employees who did not need relief. At the go-off in the establishment of the relief bureaus it might have been necessary to gather clerks, operators and employees where no lists were in existence for such places, but no claim is made by any one, and in fact I do not see how it could be, that it was not thereafter practicable within a reasonable time, say six months, to establish lists for all these places after competitive examinations. To say that it would have been impossible because of any emergency to hold examinations at any time during the last five years, and in the face of so much unemployment, invites one to

believe that the functions of the Constitution and of the municipal civil service authorities had been abrogated.

The Constitution (Art. V, § 6) reads: " Appointments and promotions in the civil service of the State, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive; * * *. Laws shall be made to provide for the enforcement of this section."

This court said in *Chittenden* v. *Wurster* (152 N. Y. 345) that if the Legislature failed to make laws to enforce this constitutional provision the duty rested upon the courts to see that it was carried out.

The Appellate Division, in its opinion in this case, said: " The positions of social investigators, clerks, telephone operators, stenographers and typists are all positions for which competitive examinations have for years been held, and proven eminently practicable." (250 App. Div. 384, 386.)

Mr. Justice SHIENTAG, in the *Aversa* case (decided herewith), reviewing this situation, said: " To permit the Legislature or a civil service commission to exempt positions by blanket enactment, irrespective of the practicability of competitive selection would be striking a vital blow at the entire merit system of the State and would tend to undermine the very foundations of the civil service so firmly embedded in state policy as to be safeguarded by our fundamental law against invasion." (164 Misc. Rep. 162, 166.)

I agree with both these statements. Whatever liberality was allowable in the filling of these positions in 1931 to enable the local bureaus to function does not justify the continuance from year to year, under the guise of emergency, of the employment of thousands in violation of this civil service principle and constitutional mandate. This has been tried before in *Matter of Ottinger* v. *Civil Service Comm.* (240 N. Y. 435). Section 359-a of the General Business Law (Cons. Laws, ch. 20), which provided that the Attorney-General might in his discretion, and without civil service examination, appoint and

employ and at his pleasure remove such deputies, officers and other persons as he deems necessary to aid in the enforcement of article 23-A of that law, was held unconstitutional as violative of the civil service provision. This court said: " No such sweeping exemption within the limits of the administrative departments of the government has ever been proclaimed since the Constitution set bounds to the discretion of the Legislature in the formation of the civil service " (p. 443).

On or about December 8, 1932, there was promulgated by the Municipal Civil Service Commission of the city of New York, as the result of competitive examination conducted by it, an eligible list of those passing an examination for social investigator. These seven petitioners, headed by the above named Sarah M. Kraus, are on this list, and it has been stipulated by counsel that if the Civil Service Law applies to these positions, then these seven petitioners are entitled to be appointed, although their list has expired; also by stipulation they waive all back salary and pay. The purpose of this stipulation no doubt has been this: to give to these petitioners those places which they would have had, had the Civil Service Law functioned. The Corporation Counsel has been very just and fair with them in entering into such a stipulation, especially as the whole staff of positions has now been, or may be placed under civil service, in accordance with the following enactments:

Chapter 822 of the Laws of 1936 amended section 19 of chapter 798 of the Laws of 1931 so as to read as follows: " * * * No person employed pursuant to this act, during the emergency period, shall· be subject to the provisions of the civil service law except that any local emergency relief bureau or other local relief authority may, with the approval of the administration or of the department succeeding to its functions, appoint its employees in accordance with the civil service law and rules from eligible lists established as a result of civil service examinations held subsequent to the time this

section as hereby amended takes effect, in the grading of which due credit shall be given for experience with the local emergency relief bureaus or other local relief authorities."

By chapter 358 of the Laws of 1937, approved May 17, 1937, the emergency relief bureaus established under chapter 798 of the Laws of 1931, as amended, shall terminate on June 30, 1937. Persons employed in cities, to which the provisions of the Civil Service Law and rules have been extended, shall hold temporary positions in the competitive class of the civil service until appointment shall be made from civil service eligible lists. After July 1, 1937, the Commissioner of Public Welfare of each city shall determine what number of positions for the administration of home relief shall be established as permanent positions and what number as temporary positions. Appointments to permanent and temporary positions shall be made from eligible lists established by competitive examinations. Eligible lists established by civil service examinations heretofore held shall be valid only if the examination was held pursuant to the provisions of section 19 of chapter 798 of the Laws of 1931, as amended. The qualifications for examinations held prior to July 1, 1938, shall be subject to the approval of the State Department of Social Welfare in consultation with the Civil Service Commission; and any person employed for a period of not less than three months, between July 1, 1936, and June 30, 1937, in an equivalent position in a public welfare department or an emergency relief bureau, established under chapter 798 of the Laws of 1931, as amended, shall be deemed eligible for admission to the examination. In the grading of such examinations a higher rating shall be given for experience in administration of home relief gained as an employee in an equivalent position in a public welfare department or emergency relief bureau than for experience gained in any other department or agency, public or private. The policy of the State was declared to be that civil service

should apply to all these positions, and that those continued should only hold temporarily until appointments could be made from eligible lists. We, therefore, see that if these seven petitioners are given the places to which they should have been appointed heretofore, having passed the civil service examination, they may be continued in the new Department of Public Welfare.

No reason is apparent why these seven social investigators who passed the regular civil service examination for such a position should not have been taken by the relief bureaus in place and instead of those who had passed no examination, and it is in accordance with the spirit and the words of our Constitution and Civil Service Law and in the maintenance of their due administration that these seven related appointees should have the privilege of continuance in the permanent service. Whether or not the civil service examinations for these permanent appointments can be made subject to the approval of the Department of Social Welfare, as provided in this law of 1937, is not here for discussion as we are merely dealing with the qualifications, in this case, of the seven petitioners.

The order of the Appellate Division is modified so as to confine its operations solely to the petitioners in this case who are the only applicants before the court. The stipulation of the Corporation Counsel and of the attorney for the petitioners states that if the positions of social investigator are in the civil service and competitive class, then these seven petitioners should have heretofore been certified from the eligible list of social investigator *and would have been appointed*. These petitioners, therefore, under this stipulation, should receive the position which they would have received if the law as we have stated it had been followed. A peremptory mandamus should issue directing that these seven applicants be given the position of social investigator as described in this opinion, and if necessary seven others who had not passed the civil service examination must

be removed to make places for these petitioners. Also by stipulation these seven petitioners are not to receive any back pay.

The order of the Appellate Division should be modified in accordance with this opinion and as so modified affirmed, without costs.

LEHMAN, J. (dissenting). The Legislature by chapter 798 of the Laws of 1931 created " a temporary emergency relief administration " to continue only during the period of " emergency " in unemployment which the Legislature found existed at that time. The " emergency period " as defined by the act " means the period between the first day of November, nineteen hundred thirty-one, and the first day of June, nineteen hundred thirty-two." Before the date fixed in advance as the limit of the " emergency period " it became evident that the need for extraordinary relief would not be over at that time. Successive Legislatures have renewed the powers of the " temporary emergency relief administration " and by new definition have extended the " emergency period." Until 1936, the successive statutes, with the exception, perhaps, of chapter 9 of the Laws of 1933, did not, in manner material to any question presented upon this appeal, change the provisions of the original statute

Section 19 of that statute provides for the appointment by city and county commissioners of " such additional clerical and other assistants or volunteers, with qualifications satisfactory to the administration, *who shall not be subject to the provisions of the . civil service law*, as may be necessary for the administration of home relief." Even in that form the legislative intent to exempt *all* employees of local bureaus from the provisions of the Civil Service Law (Cons. Laws, ch. 7) is reasonably clear. Any possible doubt is removed by the amendment to section 19, made by chapter 9 of the Laws of 1933. The section now provides that " no person employed pursuant to this act, during the emergency period, shall be subject to the provisions of the civil service law."

It is admitted that in January, 1936, the Emergency Relief Bureau of New York city employed " for the work of investigating circumstances and conditions of persons on Home Relief upwards of one thousand (1,000) persons as investigators, visitors and /or social investigators." None of these persons, or indeed any other persons of the thousands employed by the bureau, have taken a civil service examination or have been appointed from eligible lists. The petitioners have successfully passed an examination for the position of social investigator and their names were placed upon an eligible list in December, 1932. In 1936, while the list was still in force, they instituted a mandamus proceeding to compel, among other things, the Emergency Relief Bureau to employ " only such persons hereafter as shall be selected pursuant to the Civil Service Law and Rules " and " forthwith to desist from and discontinue the employment of the persons as hereinbefore set forth unless and until they shall have been duly appointed pursuant to the Civil Service Law and Rules." The Appellate Division has held that a peremptory order should be issued. The question presented upon this appeal is whether in 1936 the Emergency Relief Bureau was authorized by the Legislature to employ persons, without competitive examination and without any other restriction imposed by the Civil Service Law.

It seems clear that the Legislature intended to confer such authority. Its power to do so is challenged. The Constitution requires that " appointments and promotions in the civil service of the State, and of all the civil divisions thereof, including cities and villages, shall be made according to merit and fitness to be ascertained, so far as practicable, by examinations, which, so far as practicable, shall be competitive." (Art. V, § 6.) No person has the temerity to argue that it is not practicable to determine by competitive examination fitness for the position of social investigator, and indeed for most, if not all, of the other employments in the Emergency

Relief Bureau. Even if that were not true, the Legislature could not by sweeping exemption determine that the constitutional test is impracticable for all positions thereafter to be created, even before these positions are enumerated or described and while they are without "known or determinate duties." (*Matter of Ottinger* v. *Civil Service Comm.*, 240 N. Y. 435, 441.) Any attempt to do that would be patently futile. The Legislature was faced with a situation without precedent — one which perhaps the framers of the constitutional provision had not envisaged. New positions in the civil service are created ordinarily to meet needs which are more or less permanent, and appointments to such positions in most cases are made with some assurance of permanence of tenure. A sudden need for public relief had arisen. Nobody could be certain how long it would last. The Legislature planned an administration of relief which it hoped would be temporary. The duration of the administration was to last only a few months. The Legislature could not know in advance what positions should be created to cope with the new situation. A large proportion of the population of the State was in crying need. Starvation would not wait until the new administration had determined what positions should be created; till the Civil Service Commission had determined what competitive examinations would provide a test of merit and fitness for such positions; till a host of applicants, needy or otherwise, had been examined for the thousands of positions required in the city of New York, alone, for the administration of relief; and till appointments could be made from eligible lists prepared after such examinations. The constitutional provision serves a reasonable and very desirable purpose when applied to the "civil service" of the State as the term "civil service" is usually understood; *i. e.*, to regular and stable positions in the State service. The constitutional provision becomes unreasonable and destructive of good government if it precludes the Legislature from providing speedy and

efficient remedy in emergency and immediate relief for urgent needs, through persons employed by the State temporarily without appointment to any position in the " civil service." The Legislature adopted the only course which was practicable in connection with a temporary relief administration which was intended to last for only nine months. It may be assumed that it knew that it could not create civil service positions and then create a sweeping exemption of such positions. It authorized employment without appointment to a position in the civil service of the State.

We have held in *Matter of Social I. E. Assn.* v. *Taylor* (268 N. Y. 233, 237) that the Legislature had power to do so. We there said of the constitutional provision: " The command of that section is addressed to conventional and stable duties of the functionaries of civil government," and we held that persons who receive " work relief " may be employed as " social investigators " without violation of the Constitution. The reason is that " The positions in which they are said to be employed never actually existed." In the instant case it appears that of the thousand persons employed, only about sixty per cent are on work relief, forty per cent are paid from appropriations made for that purpose. If employment as " social investigator " is a position with " conventional and stable duties," then the position falls within the scope of the constitutional provision and the Legislature could not remove it. If the employment does not fall within the scope of that provision, the Legislature might properly provide that it should not be subject to the Civil Service Law. No sound basis exists for any distinction between employment of persons on work relief and employment of other persons.

It may be argued, however, that even if the Legislature might authorize temporary emergency employment without appointment to a position in the civil service, it could not continue to do so indefinitely. The Legislature saw the force of the argument and has now enacted statutes which place the temporary Emergency Relief

Administration upon a permanent basis and requires that appointments there shall be made in accordance with the Civil Service Law. Perhaps many may think that the Legislature should have acted earlier, but there is some room there for the exercise of legislative judgment in that regard, and we cannot say that the Legislature has exceeded its limits.

We sustained, in July, 1935, the practice authorized by the Legislature; though, it is true, with a warning that in time the practice might become illegal. By chapters 822 and 873 of the Laws of 1936, the Legislature at its next session provided for change in the status of the Relief Administration and employment thereunder. To provide for the appointment of thousands of persons to positions in the civil service after competitive examinations and at the same time to maintain efficiency of operation of temporary employment requires planning. Employment legally initiated does not in such circumstances become illegal through lapse of time alone. Orderly government requires that after decision has been made that the employment intended to be temporary has become a stable position, the temporary employment may lawfully be continued until there has been time for appointment to the stable position after determination by the proper authority as to the manner in which fitness for the position should be ascertained. After the Legislature has provided for orderly transition from a temporary status to a permanent status, the courts may not order that present employees be forthwith discharged and persons on eligible lists prepared for other positions with similar duties appointed.

The order of the Appellate Division should be reversed and the order of the Special Term should be affirmed.

HUBBS, FINCH and RIPPEY, JJ., concur with CRANE, Ch. J.; LEHMAN, J., dissents in opinion, in which LOUGHRAN, J., concurs; O'BRIEN, J., taking no part.

Ordered accordingly.