In the Matter of JUDITH ACKERMAN et al., Respondents, against PAUL J. KERN et al., Constituting the Municipal Civil Service Commission of the City of New York, et al., Appellants.

Argued June 2, 1939; decided July 11, 1939

*William C. Chanler, Corporation Counsel* (*Paxton Blair* and *Samuel J. Silverman* of counsel) for appellants.

*Albert de Roode* for respondents.

CRANE, Ch. J. In *Matter of Kraus* v. *Singstad* (275 N. Y. 302) this court called attention to the fact that section 19 of the Laws of 1931, chapter 798, was unconstitutional, in

that it provided that the clerical and other assistants employed, or to be employed, by the temporary Emergency Relief Administration should not be subject to the provisions of the Civil Service Law (Cons. Laws, ch. 7), as might be necessary for the administration of home relief. Recognizing that the emergency might require temporary employment without examination, we held that the Constitution required competitive examination for these places, and that there were existing lists for many of them, from which employees and assistants should have been taken. Existing lists were ignored and, for six years, clerks, social investigators and stenographers were continued in employment without competitive examination and in violation of the Constitution of this State. We said: " Since 1931, or for a period of five years or more, these clerks, typewriters, telephone operators, social investigators have been employed at city and State expense, without any consideration being given whatever to the Civil Service Law or the demands of the State Constitution — and all this done under the plea of emergency which never existed regarding employees. who did not need relief." (p. 307.)

The *Kraus* case related to social investigators who had passed a competitive examination conducted by the Municipal Civil Service Commission of the City of New York. We directed that these petitioners and social investigators supplant those who were filling like positions under these so-called emergency laws and had been designated from year to year as temporary employees.

The case of *Matter of Britt* v. *Kern* (279 N. Y. 701) directed the Municipal Civil Service Commission of the City of New York to certify to the Commissioner of Public Welfare the appointment of petitioners employed as stenographers, clerks and bookkeepers in the Department of Welfare of the City of New York in the place of temporary employees occupying such positions. It was noted that the Department of Welfare is the successor of the Emergency Relief Bureau in respect to home relief, and as such successor took over the employees of the Emergency Relief Bureau. The

petitioners were on promotion lists promulgated in 1936 and 1937, and they sought, by the proceeding, appointments from the lists in place of former emergency relief bureau appointees who had obtained their places without examination. This case was decided upon the authority of *Matter of Kraus* v. *Singstad* (275 N. Y. 302).

We have a similar situation in the case now before us. The petitioners, thirty-five in number, were social investigators and supervisors in the Department of Welfare, receiving salaries between $1,800 and up to, but not including, $2,400. They had passed a competitive examination for the place. They had also passed a departmental competitive examination for a higher grade, a supervisory position, designated "Assistant Chief Investigator," at a salary of $2,640 per year. The promotion examination for this position was limited to the competitive employees of the Department of Welfare simply and solely because it was an examination for promotion to a higher grade.

The Emergency Relief Bureau became the Department of Welfare on July 1st, 1937, and there were at that time ninety-four supervisory places carrying salaries of from $2,400 to $2,999, Grade 3. These places were filled by holdovers, who passed no competitive examination. These supervisory positions should have been filled by these petitioners who had passed competitive examinations for supervisors coming within the salary grade. In other words, so long as there was a competitive list for supervisors, these petitioners should have been taken instead of the temporary employees continued. The Appellate Division has unanimously so decided, placing its decision upon the authority of the *Britt* case. The Corporation Counsel concedes that this is right, provided the competitive list was appropriate for the supervising positions in home relief. He seeks to make a distinction between social investigator, such as the petitioners, and social investigator for home relief. We can find nothing in the record justifying such a distinction.

Section 14 of the Civil Service Law provides: "Appointment shall be made from the eligible list most nearly appro-

priate for the group in which the position to be filled is classified, and a new list shall be created for a stated position or group of positions only when there is no appropriate list existing from which appointment may be made."

The promotion list of supervising investigators, on which the names of these petitioners appear, was, in our judgment, an appropriate list for the positions occupied as supervisors in home relief occupied by temporary appointees. The name of the position is not important, although the change in name may be significant when there is no change in duty. Under the classification of the Municipal Civil Service Commission the position, for which these petitioners have taken promotion examinations, was called "Assistant Chief Investigator." That the duties of such investigator were essentially the same as those of Supervisor, Grade 3, the position occupied by the temporary appointees, is indicated by the reclassification made by the Municipal Civil Service Commission of New York on September 21, 1938. It reads in part:

"*Resolved,* That the competitive class of the classification of the Municipal Civil Service Commission be and the same is hereby amended as follows:

"1. By striking from Part I, The Ungraded Service, Group 3, the following:

"Assistant Chief Investigator; * * *

"Grade 3, Supervisor, $2,400 to but not including $3,000 per annum. * * *

"3. The following titles are hereby declared subject to the reclassification set forth in paragraph 2, under the terms and conditions set forth in paragraph 4, and shall hereafter be designated Old Classification Titles:

"Assistant Chief Investigator; * * *

"4. Terms and conditions:

"a. All persons of the title of Social Investigator, who are affected by this resolution, shall continue in such title with salaries, present duties and status unaffected and unimpaired by this reclassification. Promotion lists presently in existence will continue to be certified for appropriate positions in the new classification. * * *

" d. The title of Assistant Chief Investigator shall be changed to Supervisor. * * * "

Thus it is that the Department of Welfare Social Investigator Assistant, known as Assistant Chief Investigator, was to be considered thereafter Supervisor, duties unchanged. These petitioners had taken examination for Assistant Chief Investigator, Grade 3, and they were continued as Supervisors, Grade 3. positions filled by non-competitive appointees.

These rules of the Municipal Civil Service Commission are found unchallenged in the brief of the respondents, being a public document or record which this court may consider. The social investigators, a position for which these petitioners passed competitive examination, were persons, say the appellants, who merely investigated the conditions of the blind, the aged and veterans. (Public Welfare Law [Cons. Laws, ch. 42], §§ 117, 119, 122; Charter of the City of New York [L. 1901, ch. 466, as amd.], §§ 662, 676.) It is now claimed that the Social Investigator for home relief, included pursuant to chapter 259 of the Laws of 1933, and chapter 358 of the Laws of 1937, must have qualifications separate and distinct from the Social Investigator who looks after the old, the aged, the blind and the veterans. Why a person who is fit to supervise Social Investigators for the aged, the blind and for veterans is not qualified to supervise Social Investigators for people out of work, is rather difficult to understand from the facts presented in the record. It may be necessary in any instance to gather different or additional facts, or to require different kinds of reports, but the ability for the one is the same kind of ability necessary for the other, as far as I can see; or at least, the Supervisor, Grade 3 list, is an appropriate one for the positions occupied by these temporary appointees supervising home relief until it appears that the duties of supervising investigators in home relief are different from the nature of the work done by the Supervisor of Investigators in other classes of misfortune and need. Of course there is a distinction in name, and there is a difference in some of the duties and some of the facts which must be gathered, but

I cannot find any real difference among the social investigators who are finding out cases which need the public moneys to provide food and rent and medical treatment. Whether the one need comes from unemployment, or comes from old age, or blindness, or war disability, the need for food and for home and for shelter and for medical aid is the same. This distinction is one which apparently has been magnified lately, as the papers oresented to the Special Term made no mention of it.

Article 78 of the Civil Practice Act, section 1291, relating to the present practice, states: " The answer must contain proper denials and statements of new matter, as in an action, and must set forth such facts as may be pertinent and material to show the grounds of the action taken  *  *  *. He shall also serve and submit with the answer affidavits, made by a person having knowledge of the facts, or other written proof, showing such evidentiary facts as shall entitle him to a trial of any issue of fact."

The petition in this case alleged that the moving parties were in the competitive classified Civil Service, Department of Welfare, of the City of New York, known as " Social Investigators, Supervisors; " that each of the petitioners were on an existing promotion eligible list for the supervisory position of Assistant Chief Investigator, which list was promulgated and established by the Civil Service Commission in June of 1935 and is still in existence, the minimum compensation of the grade being fixed at $2,640 per annum.    It states that fifty-five persons were employed in these supervisory positions who have not passed any competitive civil service examination.    Paragraph 10 reads: "The said promotion list for Assistant Chief Investigator is an appropriate list from which to appoint persons to supervisory positions as Supervisors, Grade 3 in the Department of Welfare carrying salaries of $2,400 to $3,000 per year.    That it is appropriate is clearly shown by the examination held for such promotion, the questions in which were as set forth in Exhibit ' D ' annexed to this petition."

The answer of the appellants merely denies these allegations of paragraph 10, and there is not one word to show or

to explain why the list is not appropriate or why the duties of Supervisor of Home Relief are different from those of the Supervisor in other kinds of relief, or why relief caused by unemployment is any different than relief caused by blindness or old age or other disability. It is the relief which people have got to have, temporary or permanent, depending upon the cause. Investigation is to get the facts — the law does the rest. Neither does Mr. William Hodson, the Commissioner of Welfare of the City of New York, in his affidavit make any mention whatever or any explanation of the difference between the classes of investigation or supervisory investigators. That one requires more investigators than the other is about the substance of his affidavit.

Exhibit D, annexed to the petition, gives the questions required for promotion to Assistant Chief Investigator, and includes a discussion of the five most important facts in evaluating the work of a Social Investigator. The applicant is required to " name ten books on social work, which you have read in recent years which contributed most largely to your understanding and progress in social work." He is also required to write a paragraph of at least 150 words on any two books, such as he might prepare for a bulletin board or office circular of constructive value for the social worker. Section 8 is quite informative: " What suggestions would you make for closer correlation in social case work between the different bureaus and divisions of the Department of Public Welfare in order to promote greater efficiency and economy in the administration of such work? Give reasons for your suggestions." There is nothing here to indicate that the social investigator or worker is to qualify merely for one division — the blind division as distinguished from the unemployment division.

Although the act of 1931, chapter 798, defines home relief as shelter, food, clothing, etc., furnished by a municipal corporation to persons in their abode, and does not include relief to veterans under existing laws, old age relief and allowance to mothers for the care of dependent children, it by no means indicates that the investigator for

home relief is not doing practically the same work as investigator of any other claimed necessary relief requiring the same kind of help.

In section 3-k of chapter 358 of the Laws of 1937 we find this regarding the employees in public welfare departments: " * * * in cities' public welfare departments, in addition to their employees previously appointed from civil service eligible lists, may employ, until July first, nineteen hundred thirty-eight, such number of additional persons as may be needed for the administration of home relief for which such departments are responsible as temporary employees in the competitive class of the civil service, * * *." This seems to be a recognition that employees in the public welfare who have been taken from civil service lists and performing home relief may be supplemented by such number of additional persons as may be needed for the work who will be taken on as temporary employees until a competitive examination can be held. Nowhere do we find in any of these laws regarding home relief indication or implication of distinctions in welfare relief work, or that home relief is not similar to that already performed or being performed by the city welfare boards. Home relief merely is furnished to keep up the home.

The claim is made that these petitioners have not passed an examination, as provided by section 3-k of chapter 358 of the Laws of 1937, or an examination held, pursuant to the provisions of section 19 of chapter 798 of the Laws of 1931, as amended. (L. 1936, ch. 822.) Section 19 of chapter 798 of the Laws of 1931, unamended, was unconstitutional, in so far as it ignored existing lists for social investigators, clerks, stenographers and telephone operators. The persons upon these lists cannot be excluded from the positions to which they are entitled merely because they are filled by social investigators who have never taken the competitive examination. Neither can the persons entitled to the positions be excluded by methods which in result work a violation of our civil service laws. The requirement for competitive examination cannot

be evaded by an examination to one who has held a position for years in violation of the law, giving him a rating for experience thus gained over and above one who *had* taken the competitive examination and should have been appointed in the first place. This is permitting an experience acquired in violation of law to supersede existing competitive lists. We do not mean to say that in the examinations which have been held for all these many persons who have been temporarily appointed under these welfare laws that experience is not to count and be given a proper rating, but what we do say is that such experience cannot work against those who were upon competitive lists and should have been appointed originally. A man entitled under the Civil Service Law to appointment cannot be kept out of it by one who is not entitled to it.

For the reasons here stated the order should be affirmed, without costs.

HUBBS, LOUGHRAN, FINCH and RIPPEY, JJ., concur; LEHMAN, J., concurs in result; O'BRIEN, J., taking no part.

Order affirmed.