## JUNE *v.* DEPARTMENT OF HEALTH.

1. OFFICERS—CIVIL SERVICE—COMPETITIVE EXAMINATION.
   The civil service amendment to the State Constitution is a definite mandate that the qualifications of all persons in State civil service shall be determined by competitive performance exclusively on the basis of merit, efficiency and fitness, hence, it is proper and necessary that the civil service commission require persons to undergo a competitive examination before being certified for appointment to permanent status as a civil service employee (Const 1908, art 6, § 22).

2. SAME—CIVIL SERVICE—PROVISIONAL STATUS—CERTIFICATION AS PERMANENT EMPLOYEE.
   Contention of plaintiff that his employment in the State civil service for a period of over 4 months as a provisional employee without taking a competitive examination to gain permanent status in such employment automatically operated as a certification of status as a permanent employee *held*, without merit (Const 1908, art 6, § 22).

3. SAME—PUBLIC HEALTH LABORATORY PHYSICIAN—CIVIL SERVICE STATUS.
   Decision of State civil service commission that plaintiff, a physician, be not given a certified civil service status in the position of public health laboratory physician 6 is affirmed, where the department of health had not determined the precise outline of the duties to be performed by the occupant of such position which involved highly experimental, over and above routine, activities (Const 1908, art 6, § 22).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 10 Am Jur, Civil Service § 7.1 (Supp).
[1] Objective test as condition of competitive examination under civil service. 115 ALR 665.
[2] 10 Am Jur, Civil Service §§ 8, 12.1 (Supp).
[2] Validity, construction, and application of probationary provisions of civil service statutes or regulations. 131 ALR 383.
[3] 10 Am Jur, Civil Service, §§ 8, 14.

Appeal from Michigan Civil Service Commission. Submitted January 11, 1956. (Docket No. 71, Calendar No. 46,512.) Decided April 2, 1956.

Robert C. June presented his petition for certification in civil service status as public health laboratory physician. Petition denied. Plaintiff reviews denial by appeal in nature of certiorari against Department of Health and Civil Service Commission. Affirmed.

*William H. Wise,* for plaintiff.

*Thomas M. Kavanagh,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *G. Douglas Clapperton,* Assistant Attorney General, for defendant Department of Health.

*Jennings, Fraser, Parsons & Trebilcock (Archie C. Fraser* and *James R. Davis,* of counsel), for defendant Civil Service Commission.

REID, J. Upon leave granted, plaintiff appeals from denial by the defendant civil service commission of his petition for "reinstatement" in his position in the division of disease control of public health laboratory physician 6. Plaintiff had appealed to the civil service commission from a decision by the civil service hearing board denying his petition for such "reinstatement."

Plaintiff's application dated February 14, 1955, is as follows:

"Application of Dr. Robert C. June for leave to appeal from a final order of civil service commission denying him civil service status.

"Dr. Robert C. June, plaintiff and appellant, by William H. Wise, his attorney, respectfully shows unto the court:

"1. That on the 27th day of January, 1955, a final order was made by the civil service commission reading as follows:

" 'The following action was taken by the civil service commission at its meeting of Tuesday, January 18, 1955, with reference to the case of Dr. Robert June:

" 'Robert C. June, M. D., Michigan department of health employee, together with his attorney, Mr. William Wise, appeared before the commission in connection with Dr. June's appeal from the October 19, 1954, decision of the hearing board. Dr. A. E. Heustis, commissioner, Dr. G. D. Cummings, director, bureau of laboratories, Mr. Robert J. Murray, personnel officer, together with Mr. Douglas Clapperton, assistant attorney general, also appeared. After hearing their testimony and reviewing the hearing board record, on motion duly made and supported, the commission unanimously affirmed the decision of the hearing board in this case.'

"2. That this order was entered following a hearing on appeal to the civil service commission from a decision rendered by the civil service hearing board as of October 19, 1954, as follows:

" 'Statement of Facts

" 'Robert C. June, M.D., originally complained to the civil service commission in his letter dated January 11, 1953. He complained that he had been summarily removed from his assignment as medical director of the Michigan blood program on or about June 1, 1952, and assigned as coordinating physician in the division of laboratories.

" 'He complained that G. D. Cummings, M.D., his superior, would not explain the reassignment, and that the reassignment would cause him to be drafted into military service.

" 'He complained that after department of health commissioner, Albert E. Heustis, M.D., transferred him at his request on December 18, 1953, to the division of disease control records and statistics, that the commissioner criticized his past work and im-

posed unreasonable and unintelligible restrictions on his activities, raised inferences regarding his integrity, and humiliated him. He complained that he believed that Dr. Cummings and Dr. Heustis were arranging to have his draft status changed.

" 'An investigation was made in early 1953 but Dr. June left for military service before his case reached the hearing stage.

" 'On June 28, 1954, Dr. June complained to the civil service commission through Mr. C. J. Hess, deputy director. He complained that after returning from military leave on June 28, 1954, Dr. Heustis refused to reassign him to the same position he held prior to his military leave. He said his actual duties were not proper to a 6 level position. Mr. Hess informed the department of health that if Dr. June was employed out of classification, that such could not continue for more than 30 days.

" 'This instant appeal arises from Dr. June's letter to the State personnel director dated July 29, 1954.

" 'He complained that the department of health refused to reinstate him in the epidemiologist 6 position in the division of disease control, which he alleges he held for the last 5 months prior to his military leave.

" 'He complained that he is entitled to reinstatement in the particular epidemiologist position in which he alleges he previously worked, and regardless of whether the civil service commission ever appointed him to a position in such class, or had knowledge that he was employed in such class.

" 'He complained that he is supposedly occupying a public health laboratory physician 6 position in the division of laboratories, but is actually assigned to laboratory technician work, otherwise performed by 1 level personnel.

" 'He complained that the department of health made an 11-hour deduction from his salary because of time away from work, which time was used in visiting civil service, a veterans' counseling service,

and his attorney, all with regard to his employment rights as a veteran.

" 'He complained that he should be granted retroactive status in the public health laboratory physician 6 class and in the epidemiologist 6 class.

" 'Findings

" 'The hearing board finds Robert C. June has never had civil service status as an epidemiologist 6 or a public health laboratory physician 6. He has held a public health laboratory physician 6 position as a provisional appointee subject to examination, certification and appointment. At the conclusion of his military leave of absence he was returned to a public health laboratory physician 6 position in accordance with civil service rules. The duties currently assigned him are proper under the circumstances involved in this case. The hearing board finds no manifest unfairness or discrimination with regard to the other contested matters in this case.

" 'Order

" 'The petition of Robert E. June, M.D., is denied.'

"3. That he desires to appeal from the said order for the following reasons and grounds.

"a. The civil service commission erred in denying the petition of the plaintiff and appellant for certified status under civil service rules.

"b. The civil service commission erred in basing the order upon its Rule No 21–A which provides for provisional appointments 'in the case of a temporary vacancy by reason of leave of absence' * * * but shall not continue for longer than 4 months unless specifically authorized by the commission.

"c. That the civil service commission erred in basing its order upon the assumption that this rule had been complied with.

"d. The civil service commission erred in basing its order upon an interpretation of its own rules, that is against the spirit and intent of the constitutional amendment—article 6, § 22, providing for the civil service commission and defining its powers and duties.

"e. That the civil service commission erred in basing its order upon its Rule No 21–A which rule is contrary to the spirit and intent of the constitutional amendment, article 6, § 22.

"4. That accompanying this application is the original record of the civil service commission certified as correct by the State personnel director of the civil service commission, who is the officer having custody of said original record and also accompanying this application is a brief in support thereof.

"5. The plaintiff and applicant claims an appeal in the nature of certiorari."

Article 6, § 22, State Constitution (1908), contains the following:

"The commission shall classify all positions in the State civil service according to their respective duties and responsibilities, fix rates of compensation for all classes of positions, approve or disapprove disbursements for all personal services, determine by competitive performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the State civil service, make rules and regulations covering all personnel transactions, and regulate all conditions of employment in the State civil service."

The above amendment to the State Constitution was proposed by initiative petition and was ratified in the November, 1940, election.

Plaintiff claims that the civil service commission ered in denying his petition for certified status under civil service rules; erred in basing its order upon its Rule No 21–A, which provides for provisional appointments "in the case of a temporary vacancy by reason of leave of absence," and further provides that such provisional appointment "shall not continue for longer than 4 months unless specifically authorized by the commission;" erred in basing its order on the assumption that this rule had been com-

plied with; and erred by assuming that Rule No 21-A is not contrary to the spirit and intent of constitutional amendment, article 6, § 22.

The civil service commission Rule No 21-A is as follows:

"Provisional appointments.—In the absence of enough available eligibles to provide a full certification of 3 names, or the certification of 1 name as provided in Rule No 25-A, or in the case of a temporary vacancy by reason of leave of absence, a provisional appointment may be made. Such provisional appointment shall continue until the position can be filled through certification or the return of the employee on leave of absence, but shall not continue for longer than 4 months unless specifically authorized by the commission.

"1. An appointing authority in nominating a person for provisional appointment shall transmit to the director on prescribed form a statement of the qualifications of the nominee and other pertinent information. If such nominee is found by the director to possess the basic and necessary qualifications called for by the specification for the position, he may be appointed.

"2. Employees appointed on a provisional promotion basis shall have continuing status in the class from which they were appointed until the establishment of a promotional register for the class.

"3. The appointment of a provisional employee shall not be terminated by certification until he has had an opportunity to take a competitive examination for the position. Any provisional employee who has failed to pass sufficiently high to be within certifiable range, or who has had an opportunity to take such an examination and has not availed himself thereof, shall be certified against."

Plaintiff graduated from medical school with a degree of doctor of medicine in June, 1949, and after the usual internship of 1 year, was employed on

June 24, 1950 in a provisional status by the department of health of the State of Michigan, as a public health laboratory physician 6, a position established and classified less than a year before by the defendant, Michigan State civil service commission, on September 25, 1949. At the time of plaintiff's employment there were no other applicants desirous of that employment. No competitive examination for the new position had been arranged and given, and as a consequence no employment register from competitive examination existed; and, further, because the department of health had certified the urgency of filling the position, the State personnel director, under the provisions of civil service commission Rule No 21–A, approved the provisional appointment of plaintiff.

In a letter written to the chairman of the civil service commission under date of January 11, 1953, plaintiff stated that he was not in a civil service classification and for that reason was also writing to Governor Williams. In his letter, plaintiff complained to defendant civil service commission of certain criticisms of his work made by his superiors, and protested that his superiors were not granting him assignments of sufficient importance to insure his deferment from military service. Although no specific request was made to defendant civil service commission by plaintiff for a hearing, the commission made an investigation early in 1953 but it was not consummated because plaintiff left for military service before his matter reached the hearing stage. On June 28, 1954, plaintiff returned from military service and returned to work for the State of Michigan in the same category and on the same basis as he was originally employed—*i.e.*, provisional public health laboratory physician 6.

Before 30 days had expired plaintiff wrote defendant civil service commission under date of July 29,

1954, and sought and obtained an interview with the State personnel director, at which time, *inter alia*, plaintiff requested and was granted a hearing before the hearing board of defendant civil service commission.

On October 19, 1954, hearing was had before the hearing board of defendant civil service commission, and the board found that plaintiff had no civil service status as epidemiologist 6 or public health laboratory physician 6, but that he was holding a public health laboratory physician 6 position as a provisional appointee subject to examination, certification and appointment. The board further held that the duties then currently assigned plaintiff were proper under the circumstances and that no manifest unfairness or discrimination were found in respect to plaintiff's contentions, and the petition of plaintiff was denied.

On October 27, 1954, plaintiff took appeal to defendant civil service commission, and on January 18, 1955, hearing was had before defendant civil service commission. On January 27, 1955, decision of defendant civil service commission affirming the decision of the hearing board was transmitted to counsel for plaintiff.

Plaintiff never took an examination for the position he occupies in State service and never competed with any other person for the position. The commission has not yet fulfilled the constitutional requirement that it determine by competitive performance exclusively on the basis of merit, efficiency and fitness, the qualifications of candidates for the position of public health laboratory physician 6 in the Michigan department of health. There is no record of any such determination by the civil service commission.

In *Reed* v. *Civil Service Commission*, 301 Mich 137, we say at p 156:

"The amendment itself [Const 1908, art 6, § 22, as added in 1940] is a definite mandate that the qualifications of all persons in State civil service shall be determined by competitive performance exclusively on the basis of merit, efficiency and fitness."

Also, in *Galt* v. *Department of Labor and Industry,* 310 Mich 66, 71:

"We consider it proper and necessary that the commission required the plaintiff to undergo a competitive examination."

See, also, *Ackerman* v. *Kern,* 281 NY 87 (22 NE2d 247); and *Kraus* v. *Singstad,* 275 NY 302 (9 NE2d 938).

Plaintiff in effect claims that because he was employed in the State civil service for a period of several years as a provisional employee without taking a competitive examination to gain permanent status in such employment, that he has now become entitled to civil service status as a permanent employee. Plaintiff's contention, that serving in the State employment for a period of over 4 months automatically operated as a certification of status as a permanent employee, is without merit.

As to the reason plaintiff was put to a new line of activity, Dr. Heustis, commissioner of the department of health, testified:

"In this particular case we had a man at that particular time I thought had possibilities. There were certain things coming to my attention, right or wrong, I thought interfered with those possibilities. I thought rather than monkeying around with a long investigation the thing would be to have him come in at the earliest possible moment to lay the cards face up on the table and say these are things which may have caused some difficulty and you are supposed to do some certain things and overcome them. He was put in a brand new field to make certain he spent sufficient time in planning his work."

Dr. Heustis described work done by plaintiff in his "brand new" capacity as follows:

"Examples of work he has done in this new capacity are as follows: (1) He has taken the medical responsibility for the testing of biologic products where such testing is performed on human volunteers. Final testing of such products as histoplasmin, tuberculin and normal serum albumin, must be performed on humans, under national institutes of health regulations. (2) He is responsible for the medical aspects of the continuing study of the pathogenicity of certain strains of coliform organisms in humans. These studies have been conducted by the feeding of the micro-organisms to adult human volunteers. The findings in this work have proven to be very significant. They have shown that $E.\ coli$ 111:$B_4$ and 55:$B_5$ are capable of causing gastro-enteritis in adults when administered in sufficient quantities. Two manuscripts have been submitted and accepted for publication covering this work. (3) He has also assisted in the checking of hospital blood banks to see if they meet the requirements of the national institutes of health. (4) He is the only physician on the research committee of the laboratories. This committee is responsible to the director for the research projects under consideration by the various sections of the laboratories."

As a witness, plaintiff described his work as follows:

"As a public health laboratory physician 6 I had many duties. One had been in the Michigan blood plasma program, one was infant diarrhea research, another was the clinical testing of various products produced in the laboratories, namely, those that required testing on humans; other assignments were the checking of laboratories that were engaged in the Michigan blood program to determine whether they were satisfactory to the national health institute requirements. There were other small occa-

sional assignments that I performed as they came along."

The department of health had not determined the precise outline of the duties to be performed by the occupant of the position of public health laboratory physician 6. There was a lack of other applicants. No competitive examination could be held and no certificate could be given. The department of health desired to try Dr. June in fields of other activities, including planning his work, obtaining blood supply, and gaining information on virus technique. We do not substitute our judgment for that of officers of defendant department of health, especially where the employee's work involves highly experimental, over and above routine, activities.

Plaintiff is asking the civil service commission for a certificate entitling him to a position for which a civil service competitive examination has not been held and the duties of which are not precisely defined. The decision of the civil service commission was that the plaintiff be not given a certified civil service status in the position of public health laboratory physician 6. That decision is affirmed. Costs to the defendants.

DETHMERS, C. J., and SHARPE, SMITH, BOYLES, KELLY, CARR, and BLACK, JJ., concurred.