WALKER v DEPARTMENT OF SOCIAL SERVICES

Docket No. 81963. Submitted November 14, 1985, at Detroit.—Decided February 19, 1986. Leave to appeal granted, 425 Mich 871.

Cassie Walker was hired by the Department of Social Services to take care of an elderly neighbor, Mrs. Johnson. Walker generally worked from 9 a.m. to 5 p.m., but would also attend to Mrs. Johnson at other times, if she was needed. Once a month a DSS worker would come to Mrs. Johnson's home and inform Walker of her duties. Walker was paid monthly by a check drawn on the DSS and issued to her and Mrs. Johnson. Walker continued to take care of Mrs. Johnson until she, Walker, fell down the basement stairs at the Johnson home and injured herself. Due to the injury, DSS reduced Walker's hours to 9 a.m. to 2 p.m. each day. Walker continued to have problems and eventually stopped working because the work was too strenuous for her. Walker sought workers' compensation benefits, and benefits were awarded by a hearing referee after finding that Walker was an employee of the DSS and that she was injured in the course of her employment. The Workers' Compensation Appeal Board affirmed that decision. The DSS appealed. *Held:*

1. Walker was employed by the DSS for purposes of the Worker's Disability Compensation Act.

2. The argument made by the DSS that finding Walker to be an employee of the DSS would contravene the Michigan Constitution is without merit.

Affirmed.

REFERENCES

Am Jur 2d, Courts § 189.

Am Jur 2d, Workmen's Compensation §§ 96-150, 549-569.

Admissibility of opinion evidence as to employability on issue of disability in health and accident insurance and workers' compensation cases. 89 ALR3d 783.

Construction of provisions limiting coverage to active employees or to persons working actively in conduct of business. 58 ALR3d 993.

Construction and effect of statutory exemptions of proceeds of workmen's compensation awards. 31 ALR3d 532.

1. WORKERS' COMPENSATION — FINDINGS OF FACT.

Findings of fact in a workers' compensation proceeding are conclusive in the absence of fraud (Const 1963, art 6, § 28).

2. WORKERS' COMPENSATION — EMPLOYMENT — ECONOMIC REALITIES TEST.

Whether a person, agency, or business was an employer of a worker claiming workers' compensation benefits depends upon the economic realities of their relationship; among the relevant factors which demonstrate an employment relationship are: (1) control of the worker's duties, (2) the payment of wages, (3) the right to hire and fire, and the right to discipline, and (4) the performance of the worker's duties as an integral part of the business toward the accomplishment of a common goal.

3. WORKER'S COMPENSATION — EMPLOYMENT — ECONOMIC REALITIES TEST.

The "economic realities" test, used to determine whether a person, agency, or business was an employer of a worker claiming workers' compensation benefits, views the elements of the relationship as a whole and in relation to the statutory scheme of workers' compensation law with the goal of preserving and securing the rights and privileges of all parties; primacy is assigned to no single factor and no one factor is controlling.

4. COURTS — COURT OF APPEALS — UNPUBLISHED OPINIONS.

Unpublished opinions of the Court of Appeals are not precedentially binding (MCR 7.215[C]).

5. WORKERS' COMPENSATION — STATE EMPLOYEES — CIVIL SERVICE.

Employees of the State of Michigan who do not fill a classified civil service position are not excluded from benefits under the Worker's Disability Compensation Act (MCL 418.161[1][a]; MSA 17.237[161][1][a]).

6. WORKERS' COMPENSATION — CONTRACTORS — STATUTORY PRINCIPAL.

A party, as a statutory principal, may be liable for payment of workers' compensation benefits to an injured worker employed by a contractor if: (1) the principal is subject to the provisions of the Worker's Disability Compensation Act, (2) the contractor is not subject to the act or has not secured workers' compensation insurance coverage, (3) there is a contract between the principal and the contractor concerning the worker's services, and (4) the worker's injuries occur while performing work under that contract (MCL 418.171[1]; MSA 17.237[171][1]).

*Pianin, Graber & Paull, P.C.* (by *Michael Sugar),* for plaintiff.

*Vandeveer, Garzia, Tonkin, Kerr, Heaphy, Moore, Sills & Poling, P.C.* (by *James A. Sullivan),* for defendant.

Before: GRIBBS, P.J., and HOOD and A. T. DAVIS, JR.,* JJ.

PER CURIAM. Defendant Department of Social Services appeals by leave granted from a Worker's Compensation Appeal Board order which affirmed the decision of a hearing referee, granting disability compensation benefits to plaintiff.

According to the record, in 1976, plaintiff learned through a neighbor that Mrs. Willie L. Johnson, an invalid neighbor for whom plaintiff had run errands before, needed somebody to care for her. That same morning, Mrs. Johnson called plaintiff about the position and scheduled an interview between plaintiff and a Mr. Emberg from DSS. After the interview, Mr. Emberg had plaintiff sign some papers and then he hired her. He explained to plaintiff that her job was to see after Mrs. Johnson's needs by doing her laundry, housecleaning, running her errands, taking her to the doctor, and providing personal care.

Plaintiff began working immediately. She generally worked from 9 a.m. to 5 p.m. but would come in during her off hours if Mrs. Johnson needed her. While she was at Mrs. Johnson's home, she generally did whatever Mrs. Johnson instructed her to do.

At least once a month a DSS worker would come to Mrs. Johnson's home and remind plaintiff of her

---

* Circuit judge, sitting on the Court of Appeals by assignment.

duties. If plaintiff encountered a problem on the job she would contact the DSS.

Plaintiff was paid monthly by a check drawn on the DSS and issued to her and Mrs. Johnson. Consequently, in order for plaintiff to be paid, Mrs. Johnson had to endorse the check.

In 1978, plaintiff slipped and fell down the basement stairs at Mrs. Johnson's home sustaining injury to her back. DSS was notified of this injury. Shortly thereafter, she was hospitalized for the back injury and high blood pressure. She returned to her job but continued to experience pain.

Due to the injury, DSS reduced her hours to 9 a.m. to 2 p.m. each day. Plaintiff was informed of her change of hours by a DSS caseworker. However, plaintiff eventually stopped working because the work was too strenuous for her. She notified DSS about her decision to leave the employment and her reasons for it.

The WCAB affirmed the award of workers' compensation benefits, finding that plaintiff was an employee of DSS and that she was injured in the course of that employment. We affirm.

Findings of fact in a workers' compensation proceeding are conclusive in the absence of fraud. Const 1963, art 6, § 28; MCL 418.861; MSA 17.237(861). The question of whether defendant was plaintiff's employer for purposes of workers' compensation, however, is an issue of law for the court to decide. *Askew v Macomber,* 398 Mich 212, 217; 247 NW2d 288 (1976); *Renfroe v Higgins Rack Coating & Manufacturing Co, Inc,* 17 Mich App 259, 262; 169 NW2d 326 (1969). In determining whether defendant is plaintiff's employer, this Court utilizes the economic reality test. *Wells v Firestone Tire & Rubber Co,* 421 Mich 641, 647; 364 NW2d 670 (1984); *Askew v Macomber, supra,* p 217. Under this test, the following factors are

considered: "(1) control of a worker's duties, (2) the payment of wages, (3) the right to hire and fire and the right to discipline, and (4) the performance of the duties as an integral part of the employer's business towards the accomplishment of a common goal." *Askew v Macomber, supra,* pp 217-218. This test views the elements as a whole and "in relation to the statutory scheme of workers' compensation law with the goal of preserving and securing the rights and privileges of all parties". *Wells, supra,* p 648, quoting *Farrell v Dearborn Mfg Co,* 416 Mich 267; 330 NW2d 397 (1982). Primacy is assigned to no single factor and no one factor is controlling. *Id.*

The hearing referee set forth the following indicia to substantiate her conclusion that plaintiff was an employee of DSS:

"(1) [N]o explicit agency agreement has been shown to exist between defendant and Mrs. Johnson. (2) Plaintiff received her wages by means of a check drawn on defendant and payable to her and Mrs. Johnson. (3) Prior to employment plaintiff was interviewed by defendant's agent who also explained the job duties. (4) Defendant's agents would observe plaintiff's job performance monthly and if any problem arose plaintiff would contact defendant."

In affirming the decision of the hearing referee, the WCAB found this Court's decision in *Morin v Dep't of Social Services,* 134 Mich App 834; 352 NW2d 325 (1984), *on rehearing* 138 Mich App 482; 361 NW2d 13 (1984), *lv den* 422 Mich 909 (1985), distinguishable from the instant case. In *Morin,* the plaintiff was certified by DSS as a day-care aide and hired by June Radomski, an ADC recipient. Radomski was provided with a list of certified aides from which she selected the plaintiff. DSS paid the plaintiff by way of check made payable to

both the plaintiff and Radomski. While the plaintiff was driving Radomski's children to Radomski's place of employment, she was involved in an automobile accident and sustained injuries. A workers' compensation claim was filed against DSS. The hearing referee found the plaintiff to be an employee of DSS. The WCAB, however, reversed, finding that the plaintiff was an independent contractor hired by Radomski and not an employee of DSS.

This Court agreed. It found that DSS exerted no control over the plaintiff's duties nor did it have the right to hire or fire the plaintiff. It further found that the plaintiff was to be paid through Radomski since the draft was made payable to both. The Court also noted that the plaintiff held herself out to the public as a babysitter, a job usually performed in the capacity of a contractor.

In the case *sub judice,* the WCAB recognized that some similarities existed between the facts in the present case and those in *Morin* but did not find the similarities dispositive. The WCAB noted that unlike the case in *Morin,* the DSS in the instant case played a more direct role in hiring plaintiff. Plaintiff was not selected by Mrs. Johnson from a list provided by DSS as was the plaintiff in *Morin.* Rather, a DSS caseworker directly hired the plaintiff and instructed her about her duties.

The WCAB further noted the lack of evidence establishing that the present plaintiff held herself out to the public as a nurse's aide or housekeeper or that she performed such services for others. Therefore, there was no basis for concluding that plaintiff was an independent contractor like the plaintiff in *Morin.*

In addition, the WCAB found that, unlike in the

case at bar, the DSS exerted no control over Morin's duties and had no right to hire or fire her.

Finally, the WCAB acknowledged that the manner of payment in the present case was identical to the method of payment in *Morin.* It did not believe, however, that this single factor was controlling, given that the economic reality test views the elements as a whole, "assigning primacy to no single one". *Farrell, supra,* p 276, quoting *Schulte v American Box Board Co,* 358 Mich 21, 33; 99 NW2d 367 (1959).

We agree with the WCAB opinion that *Morin* is distinguishable from the case at bar and therefore is not controlling.

Defendant draws our attention to *Richardson v Dep't of Social Services,* (docket no. 62405, decided April 14, 1983 [unreported]), reversing 1981 WCAB 1562, *lv den* 418 Mich 883 (1983), claiming that the facts of that case are almost identical to the instant case and urging this Court to adopt the reasoning therein. We decline to do so, and remind bench and bar that under MCR 7.215(C) our unpublished opinions are not precedentially binding. See *Stine v Continental Casualty Co,* 419 Mich 89, 95, fn 2; 349 NW2d 127 (1984).[1]

In the case at bar, Mrs. Johnson did not hire plaintiff. Although plaintiff was interviewed at Mrs. Johnson's suggestion, she was hired by DSS who informed her that her responsibility was to care for Mrs. Johnson's needs. Also, while plaintiff's day-to-day duties were supervised by Mrs. Johnson, a caseworker visited the Johnson household at least once a month and reviewed plaintiff's performance. Further, after plaintiff was injured, her hours were shortened by the DSS, not by Mrs. Johnson. Moreover, plaintiff informed the DSS

[1] We also note that the facts in this case are distinguishable from those in *Richardson.*

that her injury prevented her from continuing her employment.

Concerning the manner in which plaintiff was paid, we note that the "reality" was that plaintiff was compensated by defendant. See *Morin, supra,* p 846 (CYNAR, J., concurring). We also believe that the services plaintiff performed are part of the social welfare system's broader goal of promoting client self-sufficiency. Therefore, we are compelled to find that plaintiff's services were an integral part of DSS business. *Id.*

Viewing the facts of this case as a whole, we conclude that the plaintiff herein was employed by defendant for purposes of the Worker's Disability Compensation Act.

Defendant asserts that finding plaintiff to be an employee of the Michigan Department of Social Services would contravene the Michigan Constitution. We disagree.

Const 1963, art 11, § 5, generally provides that qualifications for state civil service positions shall be determined by competitive performance, exclusively based on merit, efficiency and fitness. *June v Dep't of Health,* 345 Mich 359, 368; 75 NW2d 804 (1956); *Reed v Civil Service Comm,* 301 Mich 137, 156; 3 NW2d 41 (1942). Defendant argues that plaintiff's position was neither established nor filled in compliance with this provision.

We note that defendant did not raise this issue below and no evidence was presented on it. However, the lack of such evidence does not preclude disposition of the issue as a matter of law.

Employee, for purposes of the workers' compensation statute, MCL 418.161(1)(a); MSA 17.237(161)(1)(a), is defined in pertinent part as:

"A person in the service of the state, a county, city, township, village, or school district, under any appoint-

ment, or contract of hire, express or implied, oral or written."

In *Gottlieb v Arrow Door Co,* 364 Mich 450, 453; 110 NW2d 767 (1961), our Supreme Court noted the genesis of the Worker's Disability Compensation Act:

"The compensation laws arose from the conviction of our people that the burden of industrial injuries should be borne not exclusively by the victim and his family, but in part 'by those who profit by the industry.' See the messages of President Theodore Roosevelt to Congress, reported in 41 Cong Rec 22, 26; 42 Cong Rec 68, 72, 1347. Since all who work in the industry are necessary to the supply of the article, the injuries of all, in the words of Judge Learned Hand, 'are part of the cost of producing that supply, and compensation for them is within the scheme,' unless, of course, otherwise excluded by the terms of the act." (Footnote omitted.)

We note that the Worker's Disability Compensation Act does not provide that employees of the state are excluded from benefits if they do not fill a classified civil service position. Moreover, we find that awarding such a plaintiff benefits does not contravene the purpose of the Civil Service provision in art 11, § 5 of the Constitution which was to eliminate the evils of the spoils system which had politicized all levels of state government and improve administration of the civil service. *Council No 11, American Federation of State, County, & Municipal Employees, AFL-CIO v Civil Service Comm,* 87 Mich App 420; 274 NW2d 804 (1978), *aff'd* 408 Mich 385; 292 NW2d 442 (1980); *Reed v Civil Service Comm, supra,* p 154. Therefore, defendant's argument is without merit.

Plaintiff argues alternatively that defendant could be liable for plaintiff's workers' compensation if it was found to be a statutory principal.

MCL 418.171(i); MSA 17.237(171)(1) provides in pertinent part as follows:

"If any employer subject to the provisions of this act, in this section referred to as the principal, contracts with any other person, in this section referred to as the contractor, who is not subject to this act or who has not complied with the provisions of section 611, and who does not become subject to this act or comply with the provisions of section 611 prior to the date of the injury or death for which claim is made for the execution by or under the contract or of the whole or any part of any work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that work-man had been immediately employed by him."

Liability as a statutory principal is premised on the following elements:

"(1) DSS must be subject to the provisions of the Worker's Disability Compensation Act of 1969, (2) * * * [the contractor] must not be subject to the act or must not have secured workers' compensation coverage, (3) there must be a contract between DSS and * * * [the contractor] regarding plaintiff's services, and (4) plaintiff's injuries must have occurred while performing work under the contract between DSS and * * * [the contractor]. *Davidson v Wayne County Bd of Road Comm'rs,* 86 Mich App 592, 597-598; 272 NW2d 740 (1978)." 134 Mich App 842-843.

In the instant case, the issue of whether DSS was a statutory employer was not addressed by the WCAB. Nor are we able to dispose of this issue based upon the record before us. We need not remand this case for findings on this issue, however, given our conclusion under the economic realities test that plaintiff was employed by DSS.

Affirmed.